NORMANDIE SHIRT COMPANY, INC., Respondent, *v.* J. H. & C. K. EAGLE, INC., Appellant.

Contract — sale — action for failure to deliver goods — when offer and acceptance of partial delivery does not constitute waiver of right to cancel contract or extension of time to deliver — when manufacturer relieved by strike from liability for failure to deliver and from obligation to deliver thereafter — erroneous charge that manufacturer might be required to deliver other goods it had on hand and which·purchaser was willing to accept in place of goods ordered.

1. In this action to recover for failure to deliver goods according to contract, the manufacture of the goods was prevented by a strike. Defendant, while denying liability under the contract, made an offer to plaintiff to manufacture fifty per cent of its order. Upon plaintiff refusing this offer, defendant offered, without admitting liability, to deliver a certain number of pieces of other patterns than called for by the contract. This proposition was accepted by plaintiff. These transactions do not constitute a waiver of the right, if it existed, to cancel the contract or an extension by implication of the time to deliver.

2. When deliveries according to contract have been prevented, by strikes of a substantial nature, or other like excepted clauses, the party is relieved altogether not only from liability for failure to make such deliveries but also from the obligation to make them thereafter. As to the installments not delivered according to contract, the contract is terminated. As to such installments, if it be the intention of the parties that the strike clause is merely to delay delivery, so that goods which could not be made or delivered because of a strike must be subsequently made or delivered within a reasonable time thereafter, the contract must clearly so provide.

3. It being conceded herein that the strike was genuine and that inability to deliver was due thereto, a clause in the contract that " strikes   *   *   *   preventing the delivery of merchandise in accordance with the terms of this contract, shall absolve the seller from any liability hereunder " entitled the defendant to terminate the contract on the last day for delivery and it was not obliged to manufacture and deliver any goods thereafter.

4. A charge by the court that defendant had no right to declare the contract at an end in view of the fact that it had a large stock of

goods on hand and that plaintiff was willing to take goods of the same quality but of different design and to put up with delay, is erroneous where the evidence is uncontradicted that none of the defendant's stock on hand included the plaintiff's patterns. There is no rule of law which permits a party to change his contract and elect to take something else than the kind ordered so as to put the other party in default.

*Normandie Shirt Co.'* v. *Eagle, Inc.,* 206 App. Div. 751, reversed.

(Argued April 9, 1924; decided May 20, 1924.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 5, 1923, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*Samuel Greenbaum, Eugene L. Bondy* and *Jonas J. Shapiro* for appellant. The strike clause in the contract by its terms absolutely absolved, *i. e.,* released, the defendant from performance, by reason of the fact that the strike concededly disabled defendant from delivering the merchandise contracted for within the period fixed, to wit, June, July, August, September. (*Gen. Comcl. Co.* v. *Butterworth-Judson,* 198 App. Div. 799; *Paradine* v. *Jane,* Aleyn, 26; *Texas Co.* v. *Hogarth Shipping Co.,* 256 U. S. 619; *Crown Embroidery Works* v. *Gordon,* 190 App. Div. 472; *Baruch* v. *Dery,* 188 N. Y. Supp. 453; *Trainor Co.* v. *Amsinck & Co.,* 236 N. Y. 392; *Norrington* v. *Wright,* 115 U. S. 188; *Cleveland, etc., Co.* v. *Rhodes,* 121 U. S. 255; *Hoare* v. *Rennie,* 5 H. & N. 19; *Hull Coal & Coke Co.* v. *Empire Coal & Coke Co.,* 113 Fed. Rep. 256.) The acts of the parties did not operate to extend the time for delivery. (3 Williston on Cont. § 1961; *Essex S. S. Co.* v. *Langbeh,* 250 Fed. Rep. 98; *Trainor* v. *Amsinck & Co.,* 236 N. Y. 392.)

*I. Maurice Wormser, I. Gainsburg* and *Ralph H. Blum* for respondent. The strike clauses in the contract did not permit defendant to cancel it as to the unperformed portion thereof. (*Sanford* v. *Brown Bros. Co.*, 208 N. Y. 90; *Elwood* v. *Goldman*, 217 N. Y. 585; *Gillet* v. *Bank of America*, 160 N. Y. 549; *Cameron-Hawn Realty Co.* v. *City of Albany*, 207 N. Y. 377; *Port Aux Quilles Co.* v. *Meigs P. W. Co.*, 204 App. Div. 541; *Krulewitch* v. *Nat. Import, etc., Co.*, 194 App. Div. 544, 546; *Boret* v. *Vogelstein & Co.*, 188 App. Div. 605; *Richards & Co.* v. *Wreschner*, 174 App. Div. 484; *General Commercial Co.* v. *Butterworth-Judson Corp.*, 198 App. Div. 799; *Milliken* v. *Keppler*, 4 App. Div. 42.) The delivery period expired on September thirtieth, but was extended by mutual consent thereafter, and defendant, by its refusal to deliver within a reasonable time after demand, breached its agreement. (*Bahnsen & Co.* v. *Leaf*, 203 App. Div. 618; *Crown Embroidery Works* v. *Gordon*, 190 App. Div. 472; *General Commercial Co.* v. *Butterworth-Judson Corp.*, 198 App. Div. 799; *Salmon* v. *Helena Box Co.*, 147 Fed. Rep. 408; *Mangold S. & C. Co.* v. *Moore Stave Co.*, 197 Fed. Rep. 20; *Baker* v. *Lehman, Weil & Co.*, 186 Ala. 493; *Dimmick* v. *Banning*, 256 Penn. St. 295; *Livesley* v. *Strauss*, 206 Pac. Rep. 850; *Interior Linseed Co.* v. *Becker Moore*, 273 Mo. 433; *Cadick Milling Co.* v. *Valdosta Grocery Co.*, 126 N. E. Rep. 240; *La Independencia* v. *McAdams*, 206 S. W. Rep. 732.) Defendant did not establish that the strike prevented it from delivering plaintiff's goods to it. (*Mawhinney* v. *Milbrook Woolen Mills*, 231 N. Y. 244; *De Grasse Paper Co.* v. *Northern N. Y. Coal Co.*, 190 App. Div. 227; *Krulewitch* v. *Nat. I. & T. Co.*, 195 App. Div. 544; *Spanish Rush Broom Co.* v. *Dooberlin*, 203 App. Div. 247; *Crown Embroidery Works* v. *Gordon*, 190 App. Div. 472; *Rader* v. *Northrup-Williams Co.*, 269 Fed. Rep. 592; *Wonalaucet Co.* v. *Collins*, 125 N. E. Rep. 700; *Arkel* v. *Borenstein*, 188 App. Div. 158; *Cannistraci* v. *Chieves*, 165 N. Y. Supp. 933; *Osborn* v. *Wilson & Co.*,

118 Misc. Rep. 379; *Rosenstein* v. *Farish Co.*, 185 N. Y. Supp. 42.)

CRANE, J.   This action was brought to recover damages for failure to deliver silk shirtings, according to contract.

The complaint alleges that on or about the 20th day of March, 1919, the plaintiff and the defendant entered into an agreement in writing, a copy of which is annexed and made part of the complaint.   The exhibit recites that the plaintiff, styled the Shirt Company, has presented to the defendant, known as the Silk Company, an order in writing dated March 20, 1919, calling for the sale and delivery by the Silk Company to the said Shirt Company of 400 pieces of shirting No. 910 at $1.60 per yard, and has requested from the Silk Company credit terms of 6/10/60 upon the said order.   The agreement goes on to provide for the deposit of certificates of stock and cash as security for the purchase price and the results which are to follow from non-payment.   Article V reads:

" The written, signed order of the Shirt Company dated March 20, 1919, when accepted by the Silk Company, with all the terms and conditions thereof as appearing and referred to thereon shall, in conjunction with this document, constitute the contract between the parties and this agreement is and shall be construed as part of the said sales contract."

Besides this exhibit annexed to the complaint, the contract, therefore, consisted of the written order of March 20, 1919, when accepted, and all the terms and conditions appearing thereon.

This written order was accepted and appears as Exhibit II upon the trial of the action.   According to the plaintiff's allegations it is the contract, and all of the contract, regarding manufacture and delivery entered into between the parties.  · It reads:

" J. H. & C. K. EAGLE
" 265 Fourth Avenue
" NEW YORK *Mar.* 20–1919 M.

" Normandie Shirt Co.,
" 164 W. 27th St.,                    No. B-7578
" N. Y. C.                    Via

" Terms 6/10/60 F. O. B. New York Salesman House
" Delivery June–July–Aug.–Sept.

| Psc. Assorted Pcs. | Unassorted* | Description | Quality | Yd. Psc. | Price |
|---|---|---|---|---|---|
| — | 400 32″ Shirting—1 | Split Edge | 910 | 75/80 | 1.60 |

" Above order confirmed.
" J. H. & C. K. EAGLE,
" B. M. FESSLER,
" *Sales Manager.*"

On the reverse side of this order appear two clauses referred to in this case:

" 2 — Fire, war, strikes, legislative, judicial or public administrative acts, errors or defaults of the seller's mill, manufacturer, dyer, finisher, carrier or vendor, or any cause not within the seller's control, preventing the delivery of merchandise in accordance with the terms of this contract, shall absolve the seller from any liability hereunder.

" 9 — Failure on part of the sellers to make specific deliveries shall not invalidate the balance of this contract."

Clause 9 may be eliminated from further consideration, for it evidently means that if goods are not delivered in June as called for by the contract, nevertheless the July delivery holds good, and so regarding the other months specified. A failure to deliver in a previous month the amount called for would not affect the requirements for subsequent months. This clause, therefore, has little or no bearing upon the point raised in this case.

To understand this contract, and the claims of the

*Assortment to be given. Wks. before delivery desired Patterns to be selected as soon as Mr. Licking gets paintings together.

parties under it, it is necessary to have some idea of what it called for. The defendants were manufacturers of silk shirting, made at their mills in Shamokin, Pennsylvania. Plaintiff's order called for the manufacture of shirting according to certain designs and patterns which it was to select. The goods were not in stock, but had to be made on the defendant's looms. The shirting referred to in the contract as " one split edge No. 910 " was merely the ground work of the shirting. It was by no means the finished product. Patterns and coloring had to be added. No. 910 merely indicated the quality of the silk. As stated by the witness Michael Fessler, " 910 shirting is a quality; the 910 constitutes the ground. Every pattern is separate according to the number of stripes put in."

We may now understand the meaning of that part of the order or contract which reads, " assortment to be given, patterns to be selected as soon as Mr. Licking gets paintings together." Mr. Licking was in the defendant's employ and the paintings referred to indicate samples or representations of shirting showing the coloring of the shirting and the width of the stripes. These various paintings or drawings had numbers. The plaintiff when these paintings were ready, was to select the numbers showing the coloring and design of stripe which it desired. It did this by two selections made in writing on the order blank of the defendant, one dated May 3, 1919, and the other June 13, 1919. These are in the case as Exhibits 7 and 8. The numbers, such as 487, 720, 718, indicate, as I read the evidence, the design. Blue, gold, helio, indicate the color. Each selection was to be made up in sets of the various colors.

It will be noticed that while the contract was made March 20, 1919, no assortment or selection was given by the plaintiff until May 3, 1919. Other selections were designated as early as April 10th, but as I understand the parties, these selections were replaced by the selections

of May 3d and June 13th. Therefore, we may take it as a fact that the defendant could not very well put its warps into its looms for the plaintiff's orders before May 3d, 1919, the date of the given assortment. This May 3d assortment called for delivery in June. The June 13th assortment called for delivery in July, August and September. Charles Hertel, who had charge of the manufacturing for the defendant, stated that after the silk threads are ready to be placed in the loom it takes approximately from nine to ten weeks to manufacture the silk according to order, that is, before it is ready to be shipped from the mill.

A strike occurred at the mills on May 26, 1919. "All the looms and all the machinery were stopped, totally stopped, no wheels were turning whatsoever." The strike continued until August 18th when the mill started up with about 40 per cent of its help. At the time of the strike there was warp then in the looms. Hertel testified:

" Q. Now did you resume operations again, in the end of August of 1919? A. Partly, yes.

" Q. Now was it necessary to run off the looms, the warp, that was then in the looms? A. Yes, sir.

" Q. How long did that take? A. From 4 to 6 weeks, according to the length of the cuts on the looms.

" Q. Did you on the 18th of August immediately begin to make new warps for the various looms in the shirtings? A. Yes, sir.

" Q. Will you tell his Honor and this jury how long it takes to make warps? A. For shirtings?

" Q. Yes? A. 9 to 10 weeks."

The relation of these facts one to the other, is this: The plaintiff on May 3d and on June 13, 1919, made certain selections of silk to be manufactured. Before the goods could be made, as it took 6 to 9 weeks to manufacture them, a strike occurred, compelling the mill to close down. The mill was closed from May 26th to

August 18th. After August 18th it took from 4 to 6 weeks to remove the warp that was then in the looms which was not any part of the plaintiff's order, and it would have taken about 9 weeks to have manufactured silk shirting according to the plaintiff's order.

It is, therefore, quite apparent, and so far as I can see, not seriously contradicted, that the strike prevented the manufacture of any portion of the plaintiff's order, with possibly a small exception, within the months of June, July, August and September. The plaintiff both in the evidence and in its theory of the case, does not claim that the defendant during or after the strike could have manufactured its shirting according to order.

The plaintiff has brought this action upon the theory that the time of delivery did not end with September 30th; that the contract called for deliveries after September 30th, within a reasonable time thereafter, if by reason of a strike deliveries were delayed. The defendant interprets the contract to mean that if a strike occurred of such a substantial nature that the plaintiff's order could not be delivered before September 30th, then all or such part of it as could not be manufactured and delivered terminated and was canceled. In his brief the plaintiff's counsel states the issue: " The sole defence litigated was the sufficiency of the strike clause in the agreement to excuse defendant from performance of the uncompleted portion of its contract." And again, " By mutual consent the question litigated was whether the contract was rightfully cancelled under the strike clause or whether it was extended by consent."

Before considering the strike clause it may be well to refer to the evidence upon which the plaintiff claims that there was an extension by agreement or waiver of the time of delivery.

Mr. Blanck represented the plaintiff. Around the end of September he came to the defendant's office and saw

Mr. Fessler and Mr. Licking, the defendant's represen-
tatives. The conversation as detailed by Mr. Licking
and not denied is in substance as follows:

"Mr. Fessler carried on most of the conversation with
Mr. Blanck. He explained to Mr. Blanck when Mr.
Blanck asked for a delivery of merchandise that we had
a strike which had greatly delayed production at the mill,
and that these particular patterns which Mr. Blanck
ordered, had been delayed, and that it would be several
months before the exclusive patterns which Mr. Blanck
ordered could be delivered. And Mr. Blanck asked
whether there was some good substitute. We explained
that there might be some substitutes, but we did not feel
under any obligations to make delivery, because of the
strike, and we fulfilled our obligation on the contract.
* * * We were adjusting this matter with our customers
on a fifty-fifty basis, with those customers who were
willing to sign a revised order we were giving fifty per
cent of the amount of undelivered merchandise at the
time of this strike. * * * Mr. Blanck refused to
accept the fifty-fifty proposition, and insisted upon a
delivery of the entire quantity of the original orders, or
of the revised assortment, and we said that if he took
that attitude, whether we were right or not we would
deliver just a proportional quantity that was made in
September. * * * We said whether we were under
any obligations or not to make a delivery, we would give
him the September portion, which we explained was one-
quarter of the undelivered balance. We had delivered
27 pieces in May and we figured, with 375 pieces
unshipped, we would give him one quarter of that, or
93 pieces. He said he would take the 93 pieces, but he
wanted the rest of his assortment; and we said he would
not get another piece. * * * then he proceeded to
make his selection to get patterns that would be quickly
delivered. He selected from sample cards."

The defendant had none of the plaintiff's patterns in

stock or in the looms.  The plaintiff in order to get these 93 pieces thus offered by the defendant had to make other selections of patterns and take them as they came from the looms.  The 93 pieces were delivered; 12 pieces September 25th, after this conversation, 27 pieces on October the 14th, 18 pieces on October 22d, 36 pieces on November 1st, of which 9 pieces were returned by the plaintiff and replaced by 9 other pieces delivered on December 16th.  This made the 93 pieces which the defendant agreed to allow the plaintiff for September deliveries stating specifically that it acknowledged no liability on the contract for failure to deliver the balance. How this can be spelled out to be an extension of the contract to deliver the balance after September 30th, I do not comprehend.  The defendant offered the plaintiff to manufacture and deliver 50 per cent of its order under an arrangement which it was trying to make, or had made, with the majority of its customers.  It denied any liability to make any such arrangement.  The plaintiff refused the fifty-fifty proposition and insisted upon its full amount of assortment selected.  The defendant then figured that for September it was entitled to 93 pieces and stated that it would deliver 93 pieces without admitting any liability on the contract or any liability, and without admitting any obligation to deliver more.  Even then the plaintiff would have to select other patterns.  This offer by the defendant and acceptance by the plaintiff under these conditions did not constitute a waiver of a right, if it existed, to cancel the contract or an extension by implication of the time to deliver.

We, therefore, come back to consider the question of the strike clause, and whether this permitted the cancellation of the contract, or merely postponed the date of delivery.  This, as plaintiff's counsel has stated, constituted the only question litigated on the trial.

At the close of the case it was conceded by counsel that the strike was genuine, and the inability to deliver was

due to the strike. We find this concession in these words: Mr. Stein said: " It had also been shown that we had the *bona fide* strike, that we were unable to deliver the merchandise concededly in the months of June, July, August and September. I believe that is right, Mr. Gainsburg? "

Mr. Gainsburg: " Yes."

On the assortment selections of May 3d and June 13th, 1919, there appeared stamped in red ink this clause:

" In case of restrictions and regulations by any government, delays in transit, or delays due to strikes, accidents or any cause beyond seller's control, deliveries and shipments may be deferred, or partial deliveries made on account until contract is complete."

It is not claimed that this forms any portion of the contract sued upon. As stated at the beginning of this opinion, the contract is alleged to be an order of March 20, 1919, and the terms and conditions stated thereon. In the evidence, plaintiff's counsel offered the papers dated March 20, 1919, the two exhibits of that date as the contract between the plaintiff and the defendant. He refers to Exhibits 7 and 8, being the assortment selections of May 3d and June 13th, 1919, as " sheets giving the color or pattern assortment." In his brief the respondent's counsel refers to this clause, not as part of the contract, but as an explanation of what the parties meant by the previous contract. The contract was complete March 20, 1919. The rubber stamping does not appear until the assortment orders come along beginning with April 10, 1919, which was supplanted by the May 3d sheet.

We must, therefore, consider the contract as the plaintiff claimed it in his complaint and upon the trial, and deal with the meaning of the strike clause as printed on the order of March 20, 1919, Exhibit II, in the case. As applicable here, the clause reads, " strikes, * *. * preventing the delivery of merchandise in accordance with the terms of this contract, shall absolve the seller from any liability hereunder.".

Deliveries were prevented by a strike, as has been conceded. Did this justify the defendant in terminating the contract, or were deliveries postponed to a reasonable time after September 30th? It must be noted that in this clause we find no statement that deliveries may be made later. It is confined to liability. It is assumed that the deliveries are to be made during June, July, August and September. If the defendant failed to make these deliveries, it would be liable but for this clause of its contract. For a failure to make deliveries due to strike, it is not to be liable at all. It shall be absolved from " any liability hereunder "— not merely liability for delay, but from any liability which would include failure to deliver at all. These strike clauses appear in mercantile contracts in various language, and have been the subject of litigation in numerous cases. Out of them has developed a general rule or principle of law. It is this: When deliveries according to contract have been prevented, by strikes of a substantial nature, or other like excepted causes, the party is relieved altogether not only from liability for failure to make such deliveries but also from the obligation to make them thereafter. As to the installments not delivered according to contract, the contract is terminated. Whether this termination would extend to separable installments falling due after the strike which it would then be within the capacity of the seller to deliver within the contract term we do not need to consider. At least as to the installments falling due within the period of disability, the obligation would be ended. As to such installments, if it be the intention of the parties that the strike clause is merely to delay delivery, so that goods which could not be made or delivered because of a strike must be subsequently made or delivered within a reasonable time thereafter, the contract must clearly so provide. (*Delaware, Lackawanna & W. R. R. Co.* v. *Bowns,* 58 N. Y. 573; *General Commercial Co., Ltd.,* v. *Butterworth-Judson, supra,* 198

App. Div. 799; *Hull Coal & Coke Co.* v. *Empire Coal & Coke Co.,* [C. C. A.] 113 Fed. Rep. 256.)

Williston on Contracts, in section 1968, discussing the effect of contracts, which were contingent upon strikes and other unforeseen casualties, says: "It has become common for manufacturers and others to insert in their contracts clauses relieving them from liability in case of strikes and other unforeseen casualties. The words of these clauses are not identical, and it can only be said that while such agreements are legal, it is essential to prove that a strike or casualty within the terms of the clause in question was the actual cause of non-performance; and also that unless the clause clearly indicates that increased difficulty or enhanced prices (as distinguished from impossibility) due to the casualties in question shall afford an excuse, they will not be held to do so, at least unless extreme in degree. If such a clause becomes operative and excuses the promisor from performance, the excuse has been held not merely temporary, operative only while the casualty continues, but a permanent excuse for non-performance, unless the contract provides that delay only shall be excused."

The cases referred to by the respondent will be found to have clauses in the contracts involved clearly indicating that delivery was to be delayed and made up subsequently to the termination of the cause of delay. We conclude, therefore, that this clause entitled the defendant to terminate the contract on September 30th, and to refuse to deliver any goods thereunder of which delivery had been prevented by strikes. In other words, it could not deliver by September 30th the goods which the plaintiff had ordered, by reason of the strike. The contract as to these undeliverable goods was, therefore, at an end, and the defendant was not obliged to make them up and to deliver them later. This clause did not call for a later or postponed delivery.

At the close of the case a long argument was had by

both counsel on motions for a direction of a verdict. Both sides moved for a direction of a verdict, and the court directed a verdict for the plaintiff for the undelivered pieces of silk at the price of $3.00 a yard, taking the November price quotation. The defendant's counsel requested to go to the jury, but not on the questions here in discussion.

The learned trial justice took the opposite view of this strike clause to that which we have taken. He decided that it referred merely to deliveries, and not to the contract itself. In this, for reasons here stated, we think he was in error. The case, however, was decided by him on another point. He found that the defendant had on hand September 30th sufficient yardage to supply the plaintiff with its order. If this was so, of course, the strike clause had no application whatever to the situation, and the defendant would be liable. He said:

" It does appear that delays were caused by strikes, and there is no question that the strikes were *bona fide;* and it appears uncontradicted in the case that the plaintiff was willing to take goods of the same quality, but of different designs, and that he was willing to put up with delayed consignments of the goods.    *   *   *

"As I have said before, I see nothing in this contract that would permit the defendant to take that position on the question of prorating. Strikes are an ordinary thing in manufacturing lines, and had the defendant wanted to, it might have expressly provided in its contract that in case of strikes it would have a right to pro rate, or they might even go so far as to say that in case of strikes preventing deliveries they might declare the contract at an end, but they did not do either. The contract was extended up to a date where they probably got tired of extending it; and when the plaintiff refused to accept the fifty per cent adjustment, they then declared the contract at an end. I think they had no right to do that, especially in view of the fact that at that very time

and for weeks prior, they had a large stock of goods on hand in warehouses or stores, which they were selling generally, and which they were delivering to other contract customers at advanced prices."

The error in the judge's statement and conclusion is that the plaintiff could make a new contract by electing to take different patterns from those previously ordered. A contract is a contract and the defendant had a legal right to stand upon it. The contract, as heretofore stated, called for the manufacture of certain designated patterns. Those patterns had been selected. The defendant did not have them. It had not manufactured them. The evidence is uncontradicted that none of the defendant's stock on hand included the plaintiff's patterns. While one witness on a previous occasion had stated that some of the plaintiff's patterns had been sold to another party, he corrected the statement on this trial. There is no rule of law that I know of which permits a party to change his contract and elect to take something else than the kind ordered so as to put the other party in default. Conceding that the defendant had plenty of silk No. 910 on hand, it was under no contract to deliver it to the plaintiff if it consisted of different color and stripes and designs than those specifically ordered by the plaintiff. The selection of the 93 pieces by special permission and agreement was not a waiver of the defendant's rights under the contract as to the remaining undelivered portion as heretofore explained by me. Neither was the contract extended. This has also been touched upon by me in what I have heretofore said. By reason of what I have here stated we feel that the judgment below must be reversed and a new trial ordered, with costs to abide the event.

HISCOCK, Ch. J., CARDOZO, POUND, ANDREWS and LEHMAN, JJ., concur; McLAUGHLIN, J., absent.

Judgment reversed, etc.