WILLIAM C. ATWATER & COMPANY, INC., Appellant and Respondent, *v.* PANAMA RAIL ROAD COMPANY, Respondent and Appellant.

(Argued November 20, 1930; decided February 10, 1931.)

*Wilson W. Thompson* and *Edward M. Bassett* for plaintiff, appellant and respondent. The court erred in refusing to dismiss defendant's counterclaim. (*Normandie Shirt Co.* v. *Eagle, Inc.*, 238 N. Y. 218.) Plaintiff had no power to compel defendant to take the coal it had refused to order, accept or pay for. Each month's tonnage, or any part thereof, which defendant wrongfully refused to take, became canceled, in the sense that

there was no obligation on the plaintiff to make delivery of such unaccepted tonnage at a later time. But defendant's liability for such wrongful refusals still remained. (*Atwater & Co.* v. *Panama R. R. Co.*, 246 N. Y. 519.)

*Richard Reid Rogers* for defendant, appellant and respondent. The 4,516 tons of coal which the plaintiff failed to deliver during the first four months of the contract were automatically canceled, and not postponed to be made up subsequently by plaintiff. (*Pope* v. *Porter*, 102 N. Y. 366; *Normandie Shirt Co.* v. *Eagle*, 238 N. Y. 218; Williston on Contracts, § 872; *Norrington* v. *Wright*, 115 U. S. 188; *New York* v. *Delli Paoli*, 202 N. Y. 18; *Maurer* v. *Tubeless Wire Co.*, 272 Fed. Rep. 990.) The parties agreed to reduce the quotas for February and March to 2,000 tons each. It was, therefore, error to allow damages for the full quotas of 3,000 tons each for these months. (*Normandie Shirt Co.* v. *Eagle*, 238 N. Y. 218; *Savage Arms Corp.* v. *United States*, 266 U. S. 217.) Plaintiff cannot recover for coal not taken during the strike period. (*Delaware, L. & W. R. R. Co.* v. *Bowns*, 58 N. Y. 573; *Panzieri-Hogan Co., Inc.*, v. *Bender*, 205 App. Div. 398; *Kellogg* v. *Boutwell Milling & Grain Co.*, 203 App. Div. 350; *Cuyamel Fruit Co.* v. *Johnson Iron Works*, 262 Fed. Rep. 387; *The Richland Queen*, 254 Fed. Rep. 668; *International Paper Co.* v. *Beacon Oil Co.*, 290 Fed. Rep. 45; *Towle* v. *Remsen*, 70 N. Y. 303; *Berliner Gramaphone Co.* v. *Seaman*, 111 Fed. Rep. 679; *Mason* v. *United Press*, 94 App. Div. 617; *Kohler* v. *Northern Electrical Mfg. Co.*, 162 Fed. Rep. 876; *Jungmann* v. *Atterbury*, 249 N. Y. 119.)

LEHMAN, J. By written contract dated July 28th, 1920, the plaintiff agreed to sell and the defendant agreed to buy 36,000 tons of coal to be delivered " in approximately equal monthly proportions " during the year beginning August 1st, 1920, and expiring July 31st, 1921. At the end of January, 1921, one-half of the coal had been

delivered and accepted. Thereafter, at the request of the defendant, shipments of coal were reduced, and, from the end of March until July 26th, entirely withheld. The seller during these months was ready to deliver, each month, the monthly proportion called for by the contract. When the contract expired about 12,500 tons were still undelivered because the defendant had failed and refused to accept all the coal it had agreed to buy. For the consequent damages the plaintiff has recovered judgment.

In August, September and November, 1920, the plaintiff did not deliver the full "monthly proportions" of the coal it had agreed to sell. There was a deficit of 4,516 tons, reduced slightly by the delivery of more than the "monthly proportion" in October. During these months war conditions and other causes beyond the plaintiff's control reduced the production of plaintiff's collieries below their normal maximum capacity. The plaintiff's obligation to deliver was not absolute. The contract provided expressly that "deliveries under this contract are subject to war conditions * * * or other causes beyond our control. If during the period of this contract the production of the aforesaid collieries shall for any cause above stated be less than their normal maximum capacity the tonnage to be delivered, under this contract, shall, at the option of the seller, be reduced in proportion and there shall be no liability on the part of the seller for the reduction so made." Deliveries actually made during these months would have exhausted the seller's obligation if the seller chose to exercise its option. No obligation to deliver the deficit later, no liability for failure to deliver could then survive. (*Normandie Shirt Co.* v. *Engle, Inc.*, 238 N. Y. 218.)

Although the plaintiff never notified the defendant that it intended to exercise its option to reduce the tonnage "to be delivered" under the contract and though the defendant was not informed that the contingency had

arisen upon which the tonnage to be delivered might, " at the option" of the plaintiff, be reduced, both parties contend upon this appeal that the reduction in deliveries, actually made, operated as an exercise by the seller of the option to reduce the tonnage " to be delivered " and, of its own force, terminated all obligation to deliver or accept more. It is difficult to reconcile that contention with the pleadings in this case; it is impossible to reconcile it with the proven facts.

The defendant, perhaps not knowing that circumstances had arisen under which the plaintiff might, " at its option," reduce its obligation to deliver, during each of the months which had elapsed, the full " monthly proportions " of the coal sold, kept pressing the plaintiff to complete deliveries of each monthly installment. The plaintiff, perhaps not understanding that the effect of the exercise of its option to reduce the tonnage to be delivered during certain months would be to terminate for all time any obligation to deliver more than had been delivered during those months, or, perhaps, believing that postponement of full performance of its original obligation would prove more profitable than its partial cancellation, yielded to the defendant's urging and, during December and January, delivered not only the " monthly proportions " for those months, but, in addition, the deficit in the deliveries of the " monthly proportions " for the months which had passed. Both parties measured their contractual rights and obligations upon the assumption that these remained unchanged. At the end of January, 1921, these obligations had been fully performed except, of course, that delivery of some monthly installments had been made after the end of the month.

Perhaps the assumption that the plaintiff was under any obligation to deliver more than it had already delivered was mistaken. That we do not now decide. Right or wrong, that assumption governed the intention of the parties and dictated their acts. Delivery was

intended to cover the deficit in earlier monthly quotas. It was accepted upon that understanding. When the buyer requested and accepted delivery of the full monthly quotas for the months that had passed, it chose for its own purposes to waive its right to refuse dilatory deliveries. It wanted the coal and it received what it wanted. It may not now assert that because the plaintiff may have been under no obligation to make such delivery, the coal so delivered and accepted should be applied, contrary to the intention of the parties, in satisfaction of obligations to deliver and accept installments not then due. When the seller complied with the buyer's request to complete delivery of unfilled quotas, the seller chose for its own purposes to waive its right, if any, to refuse such delivery. It may not now assert that it was under no obligation to make such delivery and that, contrary to the intention of the parties, a new and independent contract for the purchase and sale of the coal so delivered should be implied.

The courts in determining the obligations of a contract should, when possible, apply the same measure as the parties have applied in performing their obligations. After the actual delivery and acceptance of the monthly installments, in accordance with the original terms of the contract, the seller may not assert that by acts which were, at best, equivocal, it exercised an option to reduce its original obligation. The contractual rights and obligations remained as they were written. Obligation to deliver the full monthly proportion was fulfilled, but not all the deliveries were made at the stipulated time. The question remains whether the defendant may under its counterclaim recover for delay in such deliveries.

The acceptance of the goods does not, in the absence of express or implied agreement, discharge the seller from liability in damages for breach of any promise or warranty in the contract of sale. "But, if, after acceptance of the goods, the buyer fails to give notice to the seller of the

breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor." (Personal Property Law; Cons. Laws, ch. 41, § 130.) Here there was more than a mere acceptance of the goods; there was, in addition, an implied agreement as to the effect of the acceptance. The record shows clearly that the plaintiff delivered and the defendant accepted delivery upon the mutual understanding that belated delivery should be accepted as a substitute for delivery at the stipulated time. Certainly the defendant did not intimate while requesting belated delivery that it intended to hold the plaintiff for damages for breach of its promise to deliver at the stipulated time and it gave no notice after delivery that delivery was belated.

The plaintiff of course knew that it had not delivered each month the " full monthly " proportion of the coal sold. It has been said that, even in such circumstances, the plain language of the statute bars recovery of damages for breach of the promise to deliver at the stipulated time, unless after acceptance notice of the breach is given. (Williston on Sales [2d ed.], vol. 2, § 484-a; *Trimount Lumber Co.* v. *Murdough*, 229 Mass. 254; *American Mfg. Co.* v. *United States Shipping Board Emergency Fleet Corp.*, 7 Fed. Rep. [2d] 565 [C. C. A. 2d Circuit]; *Mason* v. *Valentine Souvenir Co.*, 180 App. Div. 823; *Wildman Mfg. Co.* v. *Davenport Hosiery Mills*, 147 Tenn. 551.) We do not now decide whether, in all circumstances, there must be strict compliance with the statutory requirement of notice. From acceptance without complaint, from payment for the goods in full without objection, the inference of fact may, at times, arise that there was an implied agreement that the belated delivery should be accepted by the buyer as full satisfaction of the seller's obligation. Failure to give notice of claim of breach is, even without the statute, cogent proof of such an understanding and agreement.

Here the circumstances dictate the conclusion that delivery was made and accepted upon that understanding. Failure to deliver full monthly proportions had been due to causes which gave the seller, at its option, the right to reduce the tonnage to be delivered by it. The parties brushed aside all possible question of whether previous deliveries, actually made, constituted full performance of the obligation to deliver as, perhaps, reduced by the seller through exercise of its option. The buyer, both by what it said and by what it left unsaid, impliedly offered to receive belated delivery as satisfaction of the seller's obligation. The seller made delivery as satisfaction of that obligation. Perhaps it might otherwise have refused. The defendant, having asked and accepted delivery of the deficit in past due installments upon such an implied agreement, may not thereafter recover damages for breach of a promise to deliver earlier. The defendant's counterclaim should, therefore, have been dismissed. Until after the end of January there was no breach of any promise by either party for which · damages might be awarded.

Before that time there was a scarcity of coal which was reflected in the market price. The buyer continually pressed the seller to deliver the full monthly quotas and the seller replied with excuses for the delay. Then the situation changed. The market apparently was glutted with coal ready for delivery. The buyer at times had more coal on hand than it needed. It requested the seller to reduce or withhold deliveries for a time. The seller acceded to the request, but, later, pressed the defendant to accept deliveries. We agree with the courts below that from the correspondence no contract should be spelled out to reduce the tonnage of coal which the defendant had obligated itself to accept. On the contrary, it clearly appears that postponement of performance of the contractual obligation was not intended to terminate or reduce that obligation.

In reply to a letter from the plaintiff requesting the defendant to give shipping instructions for, and to accept delivery of, the undelivered coal, the defendant wrote on May 11th: " The present marine strike has resulted in tying up all of our colliers. As soon as the strike is terminated and we can see our way clear to resuming shipments of coal to the Isthmus, we will notify you to forward shipments to Tidewater for our account." The next day the plaintiff replied: " We have yours of the 11th inst. and are sorry to note your colliers are tied up by reason of a marine strike. We presume, however, this fact necessarily would not interfere with your ship- ments to the Isthmus inasmuch as other vessel tonnage is available for charter." To this letter there was appar- ently no reply.

The contract between the parties contains a provision that " in case of strikes or accidents unavoidably causing the stoppage or partial stoppage of the works or business of the purchaser, the delivery herein contracted may, upon request of the purchaser, be suspended or partially suspended during such stoppage, and the tonnage of deliveries so suspended shall be cancelled." The defend- ant maintains that its letter of May 11th constitutes a request for suspension of deliveries during the marine strike, and in accordance with the provisions of the con- tract, canceled its obligation to accept the suspended deliveries thereafter. The justice at Special Term sus- tained this contention and found that the defendant was thereby released from any obligation to accept 4,500 tons of undelivered coal.

The marine strike did in fact tie up the colliers which the defendant used in the business of transporting coal to the Isthmus of Panama. It did not cause any stoppage in the works or business of the defendant carried on there. The Appellate Division held that the strike on vessels, used by the defendant merely as an auxiliary to its business in Panama, did not cause a " stoppage or partial

stoppage in the works or business of the purchaser" within the meaning of the contract and gave no right to the purchaser to "request" a suspension of deliveries of coal. The language of the contract is in this respect not clear, but even if its language should receive a broad construction, we find no evidence here of any intention on the part of the defendant to "request" that, because of the marine strike, its obligation to accept coal should be partially canceled.

The defendant, it is true, interposed the marine strike as a reason why it did not at that time give shipping instructions, but it is evident from the correspondence, that just as earlier, when the seller might, at its option, have asserted a right to reduce its obligation to make deliveries, so here, when perhaps the purchaser might, at its option, have reduced its obligation to accept deliveries, the parties chose to ask temporary indulgence rather than partial release. The choice may have been due in each case to a failure to realize the extent of the contractual rights and obligations or it may have been due to a belief that postponement of performance would prove more profitable than cancellation of obligation. In any event, they did keep their obligations alive. If, thereafter, the price of coal had advanced and the defendant had chosen to demand the postponed deliveries, the plaintiff could not have refused on the ground that these deliveries were canceled at the defendant's request. After the price of coal dropped, the defendant cannot escape liability for failure to accept deliveries which it chose not to cancel.

The judgment of the Appellate Division should be modified by dismissing the counterclaim and increasing the judgment in favor of the plaintiff accordingly and as modified affirmed, with costs to the plaintiff.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.