## LUCKENBACH et al. v. ANGLO–MEXICAN PETROLEUM CO., Limited.

District Court, S. D. New York.
Dec. 21, 1934.

998

Peter S. Carter, of New York City, for libelants.

Kirlin, Campbell, Hickox, Keating & McGrann (by Charles R. Hickox and Clement C. Rinehart), of New York City, for respondent.

BONDY, District Judge.

On March 28, 1916, the respondent, a foreign corporation, organized under the laws of Great Britain, sold to the Luckenbach Steamship Company, Inc., as agents for the owners of the steamship Pleiades, 1,-000 barrels of fuel oil at 175 shillings per long ton, to be supplied to the Pleiades about May 10, 1916, at Buenos Aires, and to be lifted on or before May 31, 1916.

On April 28, 1916, the Luckenbach Steamship Company, Inc., as such agents, entered into a charter party for the charter of the Pleiades by MacLaren & Gentles, Inc., which made the charter as an accommodation for Bunge & Born of Buenos Aires. Under the terms of the charter party the Pleiades was to proceed to Rosario, South America, and there load a cargo of 4,500 tons of linseed in bags, and then proceed to New York, Philadelphia, or Baltimore and deliver same on being paid $21 per long ton freight.

The Pleiades arrived at Buenos Aires May 4th and proceeded to Baraco about a mile from the respondent's tanks and three-quarters of a mile from the tanks of the Commodoro Rivadaria Commission, to discharge a cargo of coal. Monday, May 8, 1916, the captain inquired as to the facilities the respondent had for bunkering. The Pleiades finished discharging on Saturday, May 13th.

On May 12, 1916, her master cabled libelants at New York: "Bunge Born blacklisted British Consul refuses allow Anglo Mexican supply oil advise seeing British Consul New York finishing discharge tomorrow."

On the same day libelants replied by cable: "Have advised charterers unless new shipper named by 10 A. M. tomorrow will recharter. Advise Anglo and secure oil on guarantee no enemies Great Britain or their allies will be permitted ship cargo in this steamer."

On the same day Robert J. Tod wrote on behalf of the libelants to the British Consul a letter, received in evidence on consent, stating that the charterers would not come to any settlement with libelants regarding the naming of a different shipper for the cargo and that libelants had never yet taken any cargo from or consigned to enemies of Great Britain or her allies, and had no intention of doing so.

On May 14th, the British Consul informed the respondent that the permission which had been refused May 11, 1916, had been granted to respondent to carry out the original agreement to supply said oil and respondent notified libelants' agent thereof.

On Monday, May 15, 1916, respondent, at the request of the agent of libelants, supplied the Pleiades, pursuant to said agreement, with 1,014 barrels of fuel oil. On May 26, 1916, the libelants paid in full for this oil pursuant to the agreement.

On June 8, 1916, the libelants wrote to the British Consul at New York stating that they were careful in their dealings to avoid having people interested in any charter or cargo who might be inimical to Great Britain or her allies, and that they had withdrawn the Pleiades from MacLaren & Gentles' charter, "as we certainly had no intention of deviating from our previous methods" and "we desire you to know we have taken this action even though it was detrimental to our monetary interests."

The libelants rechartered the Pleiades for a full cargo of linseed from Rosario and San Lorenzo to be carried to a United States port, at $17 a ton, a loss in freight of $4 per ton.

The libelants claim damages of $50,000 and upwards on the theory that they sustained a loss in freight and that the ship lost time.

No demand was made for the oil until about midday or early afternoon of Monday, the 15th of May. It was delivered immediately. Bunkering began at 6 and was finished at about 10:20 on Monday night, May 15th, and the ship left at daylight on the 16th.

It does not appear that the libelants considered that the respondent had violated its agreement when they received information that the British government would not permit the respondent to deliver the oil because the shippers were on the statutory black list; but, on the contrary, it appears that they sought and procured other shippers not blacklisted by the British government. The libelants demanded and accepted the

delivery of the oil pursuant to the agreement when the Pleiades had completed the discharge of cargo. Subsequently they paid for the oil pursuant to the agreement without objection.

 It also may be observed that the letters which were received in evidence reasonably lead to the inference that the libelants canceled the charter party entered into with MacLaren & Gentles, Inc., not because respondent violated any terms of its contract, but only because they desired not to carry cargo for any one on the British statutory list. In these circumstances the respondent did not cause any delay in delivery of the oil or loss of freight, or if it did, the same has been waived by acceptance and payment in full without objection. Atwater & Co. v. Panama R. R. Co., 255 N. Y. 496, 502, 175 N. E. 189.

 Moreover, if there was a breach of the agreement, it does not appear that libelants sustained any damage for loss of time or loss of freight or otherwise by reason thereof. It appears that fuel oil could have been procured at Buenos Aires from the West India Oil Company and the Comodoro Rivadaria Commission not subject to British control, for immediate delivery at or below the price which libelants agreed to pay the respondent. Accordingly, a breach of the agreement for the sale of oil would not have required the cancellation of the charter party. Libelants could have procured the fuel oil and proceeded to carry out their original charter party without any loss of time or sacrifice of any freight.

The libel accordingly must be dismissed.