## DANT & RUSSELL, Inc., v. GRAYS HARBOR EXPORTATION CO.
### No. 9196.

Circuit Court of Appeals, Ninth Circuit.

Oct. 26, 1939.

Bayley & Croson, of Seattle, Wash., and Allen H. McCurtain and M. N. Eben, both of Portland, Or., for appellant.

McMicken, Rupp & Schweppe, Alfred J. Schweppe, and J. Gordon Gose, all of Seattle, Wash., for appellee.

Before WILBUR, GARRECHT, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

In September and October 1936 the parties to this suit made several contracts in which appellant undertook to buy and appellee to sell Hemlock logs for shipment to the Orient. The contracts called for delivery and shipment in specified months during the latter part of 1936 and the early part of 1937. All deliveries were to be made either at Grays Harbor or Willapa Harbor in the state of Washington.

After the contracts were made a strike of longshoremen occurred in all Pacific coast ports. The strike commenced on October 28, 1936 and continued without interruption until February 5, 1937. All logs were delivered as required by the contracts for the periods before the strike began and after its termination. No delivery or shipment of logs was made by appellee during the progress of the labor disturbance, nor was the quantity required during the period delivered thereafter. Because of this failure to make delivery, appellant found it necessary to purchase logs at prices higher than those provided in the contracts. It sued to recover the resulting damage, and the trial court, sitting without

a jury, gave judgment in favor of the seller.

The parties are in agreement as to the amount of appellant's loss, and they agree also that the strike actually prevented shipments or deliveries while it continued. The controversy revolves about the construction of the following provision, common to all of the contracts:

"General Conditions:

"Delivery and/or shipment of materials under this contract is subject to acts, requests, or commands of the Government of the United States of America and all rules and regulations pursuant thereto adopted or approved by the said Government, *and the seller is not liable·for delay or nonshipment or for delay or nondelivery if occasioned by* acts of God, war, civil commotions, destruction of mill if named, fire, earthquakes, epidemics, diseases, restraint of princes, floods, snow, storms, fog, drought, *strikes, lockouts, or labor disturbances,* quarantine, or nonarrival at its due date at loading port of any ship named by the seller, or from any other cause whatsoever, whether or not before enumerated, beyond the seller's control, or from any loss or damage caused by perils usually covered by insurance or excepted in bills of lading, or for outturn. *Buyers agree to accept delayed shipment and/or delivery when occasioned by any of the aforementioned causes, if so required by the seller, provided the delay does not exceed thirty days."* We have supplied the italics.

It is the position of appellant that the clause afforded appellee no more than a right temporarily to suspend deliveries; hence, after the strike had terminated, appellee was bound within a reasonable time to make all deliveries which would normally have been made except·for the enforced interruption. Appellee's position is that the clause permanently excused nondelivery for the period of the strike, and that afterwards there was no duty on its part to make the· deliveries which the strike had prevented it from making.

■ With the latter contention we agree. The clause, in so many words, exempts the seller from liability, not only for delay in performance but for nonshipment and non-delivery, if occasioned by a labor disturbance of the kind which took place. This construction is fortified by the concluding sentence of the clause, relating to the optional right of the seller to require the buyer's acceptance of delayed shipments or deliveries occasioned by the causes mentioned, where the delay does not exceed 30 days. A consideration of the many factors entering into the making of contracts of this character further reinforces the view entertained.

■ The case is governed by the law of Washington, but counsel have cited no helpful authority from that state. The following cases support the conclusion here reached: Normandie Shirt Co. v. J. H. & C. K. Eagle, 238 N.Y. 218, 144 N.E. 507, 35 A.L.R. 714; Edward Maurer Co. v. Tubeless Tire Co., 6 Cir., 285 F. 713; Indiana Flooring Co. v. Grand Rapids Trust Co., 6 Cir., 20 F.2d 63, 66; Kunglig Jarnvagsstyrelsen v. National City Bank, 2 Cir., 20 F.2d 307; Black & Yates, Inc. v. Negros-Philippine Lumber Co., 32 Wyo. 248, 231 P. 398, 37 A.L.R. 1487. See, also, Williston on Contracts, § 1968. There are holdings which are said to be to the contrary, notably in Jackson Phosphate Co. v. Fertilizer Works, 4 Cir., 213 F. 743; Acme Mfg. Co. v. Arminius Chemical Co., 4 Cir., 264 F. 27, but compare the earlier case of Hull Coal & Coke Co. v. Empire Coal & Coke Co., 4 Cir., 113 F. 256.

■ Appellant attempted to prove a general custom or usage in the trade with respect to the construction ·of similar clauses, and complains of the exclusion of certain of his evidence. There was no error in this respect, for the contracts as they stood were not lacking in clarity and custom could not override them. Williams v. Ninemire, 23 Wash. 393, 63 P. 534, 537, 538. Moreover, much evidence along this line was allowed to go in, and the court properly found that the supposed custom or usage had not been established.

■ An estoppel is claimed because of the failure·of appellee to assert at the earliest opportunity its present construction of the contracts, but we think no sufficient case of estoppel has been made out.

Affirmed.