RADIOCOIN COMPANY, INC., Respondent, *v.* LURIA STEEL & TRADING CORPORATION, Appellant.

First Department, March 10, 1944.

*John J. Cunneen* of counsel (*S. F. Peavey, Jr.*, attorney), for appellant.

*Elliot F. Glassberg* of counsel (*Heermance, Glassberg & Henry*, attorneys), for respondent.

UNTERMYER, J. The plaintiff has recovered judgment in the Municipal Court, affirmed by the Appellate Term, for damages for the breach by the defendant of a contract to deliver a quantity of stainless steel spring wire. It is alleged in the complaint " that on or about October 18, 1940, plaintiff and defendant entered into a contract in writing whereby it was mutually agreed that the defendant should sell to the plaintiff, and the plaintiff should purchase from the defendant 1,500 pounds of 0.4 mm. Stainless Steel Spring Wire, of an agreed analysis, at the agreed price of $43.43 per 100 pounds less 2½% commission." In the answer these allegations are denied.

The plaintiff's evidence establishes that following a telephone conversation between representatives of the parties on September 16, 1940, the defendant wrote to the plaintiff a letter in which it offered to sell 2,240 pounds of 0.4 millimeter stainless steel spring wire at a price of $43.43 per 100 pounds f.o.b. mill with freight allowed to New York City. It was further stated that this price " includes a 2½% commission on the mill value for your account." The testimony reveals, however, that the 2½% " commission " was, in fact, in the nature of a discount commonly allowed on purchases for export, the wire having been purchased by the plaintiff for resale to a customer in China.

Following a second telephone conversation, in which it was stated by the defendant's representative that the terms contained in the defendant's letter of September 16, 1940, were still open for acceptance, the plaintiff transmitted to the defendant a written order, dated October 18, 1940, for 1,500 pounds of 0.4 millimeter stainless steel spring wire at the price of $43.43 per 100 pounds. That order, in addition to the 2½% " commission " previously referred to, provided also for " customary cash discount " and at the foot, after the word " Important " printed in bold type, contained the following printed provision: " As goods on this order is [sic] purchased for export, it is agreed that inspection is not required here, and Breach of Warranty is not waived, until a reasonable time after inspection by the Foreign customer."

Even disregarding other discrepancies between the offer contained in the defendant's letter of September 16, 1940, and the plaintiff's **order** of October 18th, the requirement of " cus-

tomary cash discount '' and the provision deferring inspection until delivery of the merchandise by the plaintiff to its customer in China are fatal to the cause of action. The evidence does not disclose that either of these new terms, which constituted material deviations from the offer, was accepted by the defendant. Not only was the provision for '' customary cash discount '' a variation of the defendant's offer which, if enforced, would exact from the defendant a reduction in price to which it had never agreed, but the provision which would have deferred inspection and notice of breach of warranty until examination of the merchandise by the plaintiff's customer in China would have the effect of relieving the plaintiff from obligations otherwise implied by law. (Personal Property Law, art. 5, § 130; *Sorenson* v. *Keesey Hosiery Co.*, 244 N. Y. 73; *Atwater & Co.* v. *Panama R. R. Co.*, 255 N. Y. 496.) The plaintiff's attempt to impose these terms on the defendant's offer precluded any meeting of the minds of the parties and renders impossible the enforcement against the defendant of a contract to which it did not assent.

It is true that the defendant subsequently repudiated the alleged agreement on the ground that the price of 0.4 millimeter stainless steel spring wire had been quoted in the belief that it referred to less expensive 4.0 millimeter wire, but that did not create a meeting of the minds where none had existed before. As the court observed in a similar case: '' There was no contract because, as has been shown, the plaintiffs did not accept the counter offer of the defendant expressed in its letter of April 6th. That being so, this letter from the defendant some months later disavowing the authority of the salesman who sent the order cannot supply the omission of the plaintiffs to accept the offer which the defendant's salesman made.'' (*Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310, p. 323.)

The determination of the Appellate Term and the judgment of the Municipal Court should be reversed and the complaint dismissed, with costs to the defendant-appellant in all courts.

DORE, J. (dissenting). The credible testimony is that the plaintiff's president spoke to defendant's representative before placing the order and was told that the wire was still available and the price originally quoted was still standard. Relying on that, plaintiff entered into commitments in China which it could not disaffirm. Defendant's offer remained alive until acceptance within a reasonable time; the parties had done business before; the acceptance related to the offer.

The outstanding fact, which defendant admits, is that defendant had made a serious mistake in computing the price quoted in its written offer. This, and not any claimed variance, was the real reason for defendant's failure to fill the order. The weight of the credible testimony and contemporaneous documents show that the alleged new terms now relied on to defeat plaintiff's claim were not relied on by defendant at the time as affecting the validity of the contract. On the contrary, defendant started to fill the order without objection as to any of its terms and only halted when it discovered its own prior mistake on the price. Even then it did not repudiate the acceptance because of any alleged variance; on the contrary it offered to fill the order but at a price two and one-half times the original price quoted.

Defendant raises the issue of the equities between the parties in claiming a so-called " catch bargain " by plaintiff. But the record shows that plaintiff suffered a substantial loss; that when defendant's error was discovered, plaintiff offered to forego any profit whatever but defendant refused to adhere to its quoted price; and that plaintiff resold the wire for only $3 per 100 lbs. over defendant's price, whereas defendant offered to fill the order but only at a price of $103 per 100 lbs., more than $20 higher than that which plaintiff actually procured from another company on the market at the time.

The trial court found in plaintiff's favor; the Appellate Term has unanimously affirmed; the credible testimony supports the conclusion of the trier of the facts and should not be disturbed.

Accordingly we dissent and vote to affirm.

MARTIN, P. J., and TOWNLEY, J., concur with UNTERMYER, J.; DORE, J., dissents in opinion in which GLENNON, J., concurs.

Determination of the Appellate Term and the judgment of the Municipal Court reversed and the complaint dismissed, with costs to the defendant-appellant in all courts. Settle order on notice. [See *post,* p. 954.]