In the Matter of the Estate of MEYER WOLOZIN, Deceased.

Surrogate's Court, New York County, December 28, 1948.

*Myron J. Greenfield* for Emma Wolozin, petitioner.

*Gerald H. Chambers* for Herbert Wolozin and others, as executors of Meyer Wolozin, deceased, respondents.

*Frederick V. P. Bryan,* special guardian for Rochelle Wolozin and another, infants, respondents.

DELEHANTY, S. The widow of deceased asks the court to determine the validity and effect of her election under section 18 of the Decedent Estate Law to take against the will. The executors and the special guardian of infant beneficiaries under the will set up several defenses against her right to elect. The principal defense is that by an agreement in writing she duly waived any and all rights to elect to take against the will of deceased.

On June 4, 1942, petitioner and deceased entered into an antenuptial agreement and eight days later they were married. The agreement insofar as material here provided:

" 1. Meyer Wolozin agrees in and by his will to provide that Emma Shapiro shall receive as a bequest and legacy under the last will and testament of Meyer Wolozin, the sum of Ten Thousand Dollars, ($10,000) which sum shall be payable free from inheritance or any other taxes.

" 2. In order to insure the payment of the said sum of Ten Thousand Dollars, ($10,000), Meyer Wolozin agrees that insurance on his life in that sum shall be payable to his estate. * * *

" 6. Emma Shapiro agrees to and does hereby accept the provisions herein for her benefit contained in lieu of and in

full release and discharge of any and all rights that she has or may at any time have in and to Meyer Wolozin's property or estate or any part thereof, under the laws of any state or country, including but not limited to dower rights, rights to community property, rights to take against Meyer Wolozin's will or rights to allowance for support during the administration of Meyer Wolozin's estate, all of which Emma Shapiro has been fully informed by her attorney.''

In 1945, petitioner discussed with deceased what she conceived to be the unfriendly attitude of one of deceased's sons toward her. Though deceased assured her that she was mistaken in her assumption he finally said that the best thing to do was to make over to her a policy of life insurance in the sum of $10,000 so that there could be no occasion of friction between petitioner and the sons. Deceased had a $10,000 policy payable to his '' Executors, Administrators or Assigns '' which had been pledged as collateral to a bank loan but which was then free of any lien. Petitioner nodded her assent to this arrangement. The change of beneficiary under the policy was effected on October 15, 1945. Deceased's accountant advised petitioner of the change and she expressed pleasure at the arrangement. In her presence the witness told deceased that his will should be modified in accordance with this arrangement. Deceased executed his last will on November 29, 1945. In the fourth paragraph he provided for payment of the rent due under a lease of an apartment so long as his wife continued to occupy it during the term of the lease and in the fifth paragraph he gave her his personal and household effects and the sum of $600. The third paragraph reads: '' Aside from the bequests found in paragraphs ' Fourth ' and ' Fifth ' hereof, I make no additional bequest to wife, Emma, for the reason that pursuant to agreement made between us during our lifetimes, I have provided a $10,000.00 life insurance policy, payable at my death to her, which policy is in existence, in return for which she has waived all claims whatsoever against my estate. I direct my Executors and Trustees to pay any and all inheritance and other taxes due on said $10,000.00 life insurance policy.''

Petitioner concedes that she received the proceeds of the insurance policy amounting to $10,169.50. Nevertheless, she contends that deceased failed to give her in his will a legacy of $10,000 and because of this alleged failure of performance she has rescinded the agreement in which she waived her right of election. She argues that because a waiver of her right to election must be in a writing duly acknowledged by her, the

subsequent oral variation of the written agreement would amount to a new oral contract which would be ineffectual to deprive her of her right to elect.

It is patent that petitioner has received from deceased more than she had the right to demand under the terms of the written agreement. It is equally obvious that she is now attempting to get vastly more than her elective share for she insists on keeping the insurance proceeds in addition to demanding her intestate share. There can be no doubt that the manner in which deceased actually performed his contract obligation was more beneficial to the petitioner than the manner of performance required by a strict interpretation of the written agreement. The writing required only a legacy of $10,000 and an insurance policy " payable to his estate " in order to insure payment of that sum. The text of the agreement was drafted by lawyers for both parties and its operative effect was fully understood. If the insurance proceeds had been paid to the executors the fund would have been subject to payment of administration expenses, claims of creditors and other prior claims. Petitioner had no assurance that the full amount of her legacy would be paid to her. On the other hand under deceased's actual performance of his obligation she had positive and complete assurance that she would receive a minimum of $10,000 immediately upon his death, free from all claims against his estate.

" The courts in determining the obligations of a contract should, when possible, apply the same measure as the parties have applied in performing their obligations " (*Atwater & Co.* v. *Panama R. R. Co.*, 255 N. Y. 496, 501). When at the time of performance the parties are in full accord that an act done by a promissor constitutes full and complete performance of his obligation, the courts will hesitate to say, especially after the death of one has rendered impossible any further act of performance, that what was accepted as full performance was in fact no performance at all.

Even if what was done be regarded as a substitute for what was promised and in effect an oral variation of the written agreement, petitioner cannot succeed. Her waiver of her right to elect to take against the will is in writing and was duly subscribed by her and acknowledged. The agreement required deceased to make certain provisions for her and he has done so in a manner acceptable to petitioner and in a degree vastly greater than she could have demanded. She now comes into a court of equity and asks that her rights be defined. Her entire case is predicated upon her right to rescind the agreement

because of deceased's alleged failure to perform his obligations in strict accord with the written word. Her position is wholly without merit. The court is not required to hold that the subsequent transactions resulted in a new contract modifying by oral promise the terms of the written agreement. All that need be said is that the petitioner became estopped to terminate the agreement at least without reasonable notice to deceased during his lifetime that her assent to the arrangement had been withdrawn (*Holden* v. *Efficient Craftsman Corp.*, 234 N. Y. 437, 439; *Lieberman* v. *Templar Motor Co.*, 236 N. Y. 139, 147; *Imperator Realty Co.* v. *Tull*, 228 N. Y. 447; 2 Williston on Contracts [Rev. ed.], pp. 1710–1711). "Assent to new terms of performance, even if invalid as a contract, will serve as an estoppel excusing what would otherwise be a default until assent has been recalled" (*Lieberman* v. *Templar Motor Co.*, *supra*). "A contract is the sum of its component terms. Any variation of the parts is a variation of the whole. The requirement that there shall be a writing extends to one term as to another. There can, therefore, be no contractual obligation when the requirement is not followed. This is not equivalent to saying that what is ineffective to create an obligation, must be ineffective to discharge one. * * * There may be procurement or encouragement of a departure from literal performance which will forbid the assertion that the departure was a wrong. * * * There may be an acceptance of substituted performance, or an accord and satisfaction. * * * I do not think we are driven by any requirement of the Statute of Frauds to sustain as lawful and effective this precipitate rescission, this attempt by an *ex post facto* revocation, after closing day had come and gone, to put the plaintiff in the wrong. * * * Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver (citing cases). We need not go into the question of the accuracy of the description (Ewart on Estoppel, pp. 15, 70; Ewart on Waiver Distributed, pp. 23, 143, 264). The truth is that we are facing a principle more nearly ultimate than either waiver or estoppel, one with roots in the yet larger principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong" (Cardozo, J., in *Imperator Realty Co.* v. *Tull, supra*, pp. 455–457).

The court accordingly holds that petitioner has waived and released her right of election to take against deceased's will (Decedent Estate Law, § 18, subd. 9).

Submit on one day's notice, decree accordingly.