THE BAGLEY AND SEWALL COMPANY, Respondent, *v.* THE SARANAC RIVER PULP AND PAPER COMPANY, Appellant.

A written contract for the manufacture and sale of certain machines to be used in the manufacture of wood pulp, contained a guaranty on the part of the vendor that the machines would take care of all the pulp produced from "four Scott grinders." In an action to recover the contract price, defendant set up as a counterclaim a breach of this guaranty. It appeared that such grinders were constructed of different productive capacities, and that defendant had contracted for four of said machines. *Held*, that plaintiff was properly permitted to show that the guaranty was given upon the representation of defendant that the "Scott grinders" contracted for had the capacity to produce a certain amount of pulp, and that the machines furnished would care for that quantity; that the receipt of the evidence was not in conflict with the rule excluding oral evidence to contradict or change a written instrument, as the evidence did not contradict, but simply explained the contract.

(Argued June 15, 1892; decided October 11, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made November 30, 1891, which affirmed a judgment in favor of plaintiff, entered upon a verdict and denied a motion for a new trial.

This was an action to recover the contract price for certain machinery sold by plaintiff for defendant.

The facts, so far as material, are stated in the opinion.

"The guaranty for the breach, of which the defendant sought to counterclaim damages, is contained in the written proposition made by the plaintiff to the defendant October 30, 1888, and orally accepted by the defendant, for the sale to the defendant of two 'wet machines,' to be used in the manufacture of wood pulp, after the process of grinding the pulp had been done by other machines constructed for that purpose.

"The clause of guaranty is as follows: 'We will guaranty the above machines to take care of all the pulp produced from four Scott grinders, and deliver the pulp 50 per cent dry.' When the proposition was made, the defendant was engaged in erecting a pulp mill on his premises, and had contracted with the manufacturer of the Scott grinders for four grinders to be placed in the mill. They were subsequently placed in the mill, as were also the machines purchased from the plaintiff.

"The defendant, in support of its contention, gave evidence tending to show that the machines bought of the plaintiff would not take care of all the pulp produced by the four grinders placed in the mill, and deliver it fifty per cent dry. The four grinders would produce about eight tons of pulp a day, and the machines purchased of the plaintiff, while they would provide for that quantity, would not deliver it fifty per cent dry, but forty to forty-five per cent dry. It was established on the part of the plaintiff that the machine would take care of at least six tons of pulp per day, and deliver it fifty per cent dry, being an amount equal to 3,000 pounds of pulp for each grinder.

"The plaintiff in answer to the alleged counterclaim was permitted to show that the guaranty was given upon the representation of the defendant that the Scott grinders, for which they had contracted, had a capacity of producing each 3,000

pounds of pulp per day, and that the proposition and guaranty were based upon this production. The point insisted upon in behalf of the defendant is that this evidence was inadmissible, because in violation of the rule excluding oral evidence to contradict a written contract. Whether this evidence was in violation of the rule invoked is the main question in the case. The negotiation between the parties did not have its inception at the date of the proposition (Oct. 30, 1888). On June 27, 1888, the defendant addressed a letter to the plaintiff saying: 'We have already made a trade for four grinders, that are guaranteed each to make 3,000 pounds every 24 hours, dry weight, and now we want to get a press to take care of it.' In another letter of October 16, 1888, the defendant said: 'The machines we are putting in are guaranteed each to make 3,000 pounds, dry weight, pulp each 24 hours, or the four machines will turn out six tons a day. Now will one of your 72-in. machines take care of this amount of pulp ?' The conversation between the parties concurrently with the date of the proposition (Oct. 16, 1888), shows that the guaranty was made upon the basis that the capacity of the Scott grinders to be placed in the mill was 3,000 pounds of pulp per day.

"The inequity of the alleged counterclaim is apparent. But this is no answer to the rule of law invoked, if by its proper application it excludes a consideration of the facts referred to.

"We think it may well be doubted whether the letters of June 27, 1888, and October 16, 1888, may not be considered as parts of the written contract for the sale of the machines. The proposition of guaranty of October 30, 1888, was its culmination, but the previous letters of the defendant explain the application of the guaranty, and being themselves in writing their consideration does not contravene the principle upon which oral terms are forbidden to be engrafted upon written contracts. But passing this we are of opinion that the oral evidence was competent to ascertain and define the capacity of the grinders to which the guaranty related. The parties were contracting for machines which would take care of the pulp produced by 'four Scott grinders,' and deliver it at a certain dryness. The amount of pulp produced depends, as

the evidence shows, upon the capacity of the grinders and the power applied. Scott grinders are manufactured of varying capacity. The plaintiff had no knowledge of the capacity of the grinders which were to be placed in the mill, except as informed by the defendant. It would be unreasonable to suppose that in making the contract with the plaintiff, the parties contracted without reference to the capacity of the grinders to be used, or that by the words, 'all the pulp produced by four Scott grinders,' the parties intended all the pulp which could be produced by any Scott grinders operated with any power, however great. The extrinsic circumstances show that they had reference to the production of the four grinders contracted for, having the capacity represented by the defendant.

" In interpreting the guaranty, parol evidence identifying the machines known as Scott grinders is essential. The fact that the grinders are of different productive capacity, involves the further inquiry, to grinders of what capacity did the parties refer. This we think was the subject of explanation by parol evidence. Such evidence does not contradict the written contract, nor does it add a new term thereto. It simply makes intelligible what needs explanation, and construing the written contract in light of the explanation, full force is given to all the words, without adding to or detracting anything therefrom. (See *Chapin* v. *Dobson*, 78 N. Y. 74; *Schmittler* v. *Simon*, 114 id. 177; 1 Green. Ev. § 227 *et seq.*)

" The parol evidence was not admitted to limit the guaranty to a part of the product of the Scott grinders which the parties had in mind, but to show the particular grinders referred to and their capacity, and that the contract related to grinders of that description.

" The conclusion we have reached renders it unnecessary to consider any of the other questions in the case. The facts as to the contemporaneous oral understanding of the parties and the other extrinsic facts are undisputed, and the plaintiff was entitled to judgment thereon.

" The judgment below is therefore affirmed, with costs."

*Frank E. Smith* for appellant.

*Elon R. Brown* for respondent.

ANDREWS, J., reads for affirmance.

All concur.

Judgment affirmed.