JEROME R. PETRIE, Respondent, *v.* THE TRUSTEES OF HAMIL-
TON COLLEGE, Appellant.

1. APPEAL — GENERAL EXCEPTION TO GENERAL REPORT OF REFEREE.
When the report of a referee is general, without finding the facts in detail,
a general exception filed thereto is sufficient to authorize a review of the
referee's decision by the appellate courts.

2. PRESUMPTION OF FACTS FOUND.    When the report of a referee is
general in form, the presumption in support of the judgment rendered by
him is that all the facts, warranted by the evidence and necessary to sup-
port his judgment, were impliedly found by him.

3. PRESUMPTION OF REVERSAL WHOLLY UPON ERRORS OF LAW.    When,
on reversing a judgment of a referee, the Appellate Division does not state
in its order or judgment that the reversal was upon the facts, the presump-
tion required by statute (Code Civ. Pro. § 1338) is that it was founded
wholly upon errors of law, and the facts stand approved by that court.

4. REVIEW OF REVERSAL OF REFEREE'S JUDGMENT.    On appeal from
an order of the Appellate Division reversing a referee's judgment dismiss-
ing the complaint, where the order does not show that the reversal was
upon the facts, the review by the Court of Appeals is confined to the con-
sideration of whether, upon the decision made by the referee upon the
facts, the legal conclusion followed that the defendant was entitled to a
dismissal of the complaint.

5. GRANT OF WATER RIGHTS — LATENT AMBIGUITY — PAROL TESTI-
MONY.    A latent ambiguity as to the subject-matter of a grant "of the
waters of Kirkland Glen brook, which runs over my land," is presented by
proof that there are two brooks running over the grantor's land and that
the name "Kirkland Glen brook" had never been used before; and it is
then competent to resort to parol testimony as to the meaning and extent
of the grant.

6. DISMISSAL OF COMPLAINT TO RESTRAIN DIVERSION OF WATER A LEGAL
CONCLUSION FROM FACTS PRESUMED FOUND BY REFEREE.    Where from
the state of the record involving such a latent ambiguity in a grant of
"the waters of Kirkland Glen brook," without limitation of quantity, a
referee is presumed to have found, under the circumstances and as under-
stood by the parties at the time the conveyance was made, that the grant
meant the waters of both of two brooks running over the grantor's land,
and that no fraud was practiced in obtaining the conveyance, the legal
conclusion follows that the referee properly dismissed a complaint by
which the grantor sought to restrain the grantee from diverting any water
from one of the two brooks, and from diverting more than a certain
limited quantity from the other.

*Petrie* v. *Trustees of Hamilton College,* 8 App. Div. 371, reversed.

(Argued March 9, 1899; decided March 21, 1899.)

Appeal from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered September 17, 1896, reversing a judgment in favor of defendant entered upon the report of a referee, and granting a new trial.

The object of this action was to restrain the defendant from diverting any water from South brook, so called, upon the premises of the plaintiff, and from diverting more than one-tenth of the water from Kirkland Glen brook, so called, also upon the premises of the plaintiff. The main ground upon which this relief was sought, according to the allegations of the complaint, was that the defendant had made false representations in order to procure a conveyance of certain water rights from the plaintiff.

Upon the trial it appeared that the plaintiff owned a farm of about fifty-six acres, crossed by two small brooks, each having its source in an independent spring upon the land of one Scollard some distance above the premises of the plaintiff As measured in May, 1895, the north spring furnished 151,200 and the south spring 78,872 gallons in twenty-four hours, while the north branch just above plaintiff's land furnished 256,845 gallons, and the south branch 123,110 in the same time. The two springs are over five hundred feet apart and have no connection. A small stream flows from each, in a defined channel through a separate ravine, across the land of said Scollard and one Ward, when they reach the premises of the plaintiff and flow across his land still about five hundred feet apart. About three-quarters of a mile from their sources, and less than half a mile below the land of the plaintiff, they unite and flow in one stream about two miles to Oriskany creek. Just below the junction the daily flow in May, 1895, was 412,342 gallons.

On the 26th of July, 1894, a representative of the defendant called upon the plaintiff "for the purpose of obtaining from him the privilege of diverting the water flowing across his land to Hamilton College sufficient to supply its water works, which the defendant contemplated constructing, and the plaintiff executed and delivered a writing, of which the

following is a copy : ' This conveyance, made 26th day of July, 1894, from J. R. Petrie to the trustees of Hamilton College, witnesseth ; said J. R. Petrie grants and conveys to the said college corporation the right, privilege and easement to take from and divert the waters of Kirkland Glen brook, which runs over my land, in the town of Kirkland, county of Oneida, sufficient to supply the Hamilton College water works to be constructed. The consideration of this grant is one dollar.' " This instrument was duly signed and sealed by the plaintiff in the presence of a subscribing witness, and delivered to the defendant.

Prior to the making of said conveyance the branches running across the plaintiff's land had no name and were designated in such writing as the Kirkland Glen brook. A member of the committee representing the college testified, without objection, that just before the plaintiff executed this instrument the following conversation took place : " I told him the college contemplated building water works; that I understood he owned some land over which flowed these streams of water ; I asked him if he knew of any name for these streams ; he replied he never heard of any name being given to them ; I then told him I had dubbed them the Kirkland Glen brook in order to have them designated by some title to appear on the record ; I told him we wanted sufficient water to supply the college water works, and also the right to lay pipe to conduct the water down to the college ; plaintiff asked how much water we wanted ; I said impossible to tell him how much would be used, but we wanted a sufficient supply for Hamilton College water works ; I told him no living man could tell how much water it would take * * * but I want sufficient water to supply the college water works ; he asked me where the college proposed to locate the reservoir ; I said not yet decided what we should do ; that I had seen Scollard that morning and he had told me the place to go was on his farm, unite the two springs and take the water from them. * * * I told him we had a conditional agreement with Ward to build on his land if the college so desired."

At the same time that the conveyance from plaintiff to defendant was executed the plaintiff executed another instrument whereby he granted " to the said college corporation the right, privilege and easement to lay and maintain conduit pipes for water across his land in the town of Kirkland, county of Oneida, in the direction of Hamilton College buildings from the premises of Charles Ward and James I. Scollard, for the privilege of supplying the college water works below, the exact line for said pipes to be located when said corporation has completed plans for such works and when ready to construct the same ; the consideration of this grant is one dollar, and if any damage is done to growing crops, by reason of said work, then the trustees of said college will pay said damage." Immediately after these papers were signed the plaintiff took the committeeman to the south spring, said it was the better of the two and was the place to build the reservoir.

About the time of the execution and delivery of these instruments the defendant obtained similar privileges from the landowners above and below the land of the plaintiff. Subsequently the defendant made preparations to build a reservoir and divert the waters from the springs forming the sources of both of the brooks flowing across the land of the plaintiff, claiming the right to do so under said grant.

The plaintiff testified among other things that the conversation between him and the committeeman was that the defendant was to take water from the north branch only, and but one-tenth of the water flowing therein. The only person present when the arrangement was made corroborated the version of the committeeman and contradicted that of the plaintiff. There was evidence tending to show that there was sufficient water for the defendant and all the landowners.

The referee before whom the action was tried made a general report without finding the facts in detail and dismissed the complaint, without costs, and the plaintiff filed a general exception. The order of the Appellate Division reversing the judgment entered on the report of the referee did not state that the reversal was based upon the facts.

From the order of reversal the defendant appealed to this court, giving the usual stipulation.

*C. D. Adams* for appellant. A general exception to a referee's report presents no question to an appellate court. (156 N. Y. 90; 140 N. Y. 356.) The conveyance was intended to and did give the right to divert water from both springs and the rivulets, and brook formed by them (they were all one), as decided by the referee. (Gould on Waters, §§ 41, 318, 319; Wood on Nuisance [3d ed.], 416, 417; Angell & Ames on Watercourses [6th ed.], § 4; 28 Am. & Eng. Ency. of Law, 944; 1 H. & N. 627; 6 Hill, 453; 106 N. Y. 548.) The judgment directed was on the merits, and not one of non-suit. (152 N. Y. 333; 68 N. Y. 443; 114 N. Y. 551; 127 N. Y. 361.)

*Henry T. Coupe* and *L. M. Martin* for respondent. The two streams which the defendant purposes to divert are water-courses. (*Jeffers* v. *Jeffers*, 107 N. Y. 650.) The right to divert the water of one stream only was given by the plaintiff to the defendant. (*Coleman* v. *M. B. I. Co.*, 94 N. Y. 232; *Thayer* v. *Finton*, 108 N. Y. 397; *Green* v. *Collins*, 86 N. Y. 246; *Armstrong* v. *Du Bois*, 90 N. Y. 95; *Root* v. *Wadhams*, 107 N. Y. 384; *Griffiths* v. *Morrison*, 106 N. Y. 165; *Jackson* v. *Halstead*, 5 Cow. 216; *Winchester* v. *Osborne*, 61 N. Y. 555; *Coffin* v. *City of Brooklyn*, 116 N. Y. 159; *Clark* v. *Devoe*, 124 N. Y. 126.) The instrument in question conveyed the right to divert the waters of the north stream only. (*Groat* v. *Moak*, 94 N. Y. 125.) The defendant has no right to divert the water of the south stream unless that right is given to it by the plaintiff by the use of plain and direct language expressed in the instrument establishing the right. (*Gilzinger* v. *S. W. Co.*, 66 Hun, 173; *Chace* v. *W. W. W. Co.*, 79 Hun, 151; *Corning* v. *T. I. & N. Factory*, 40 N. Y. 191; *Clinton* v. *Myers*, 46 N. Y. 511.) The exceptions taken by the plaintiff upon the trial were well taken. (*A. C. S. Inst.* v. *Burdick*, 87 N. Y. 40; *Welles* v. *Yates*, 44 N. Y. 525.)

Vann, J.   The general exception filed to the report of the referee was sufficient to authorize a review of his decision. (*Otten* v. *Manhattan R. R. Co.*, 150 N. Y. 395, 399.)   As the report was general in form, the presumption in support of the judgment rendered by the referee is that all the facts, warranted by the evidence and necessary to support said judgment, were impliedly found by him. (*Amherst College* v. *Ritch*, 151 N. Y. 282.)   The learned Appellate Division did not state in its ·order or judgment that the reversal was upon the facts, and hence the presumption required by statute is that it was founded wholly upon errors of law, and that the facts stand approved by that court. (*Bomeisler* v. *Forster*, 154 N. Y. 229, 236; Code Civ. Pro. § 1338.)   As stated in the case last cited, "our review is, therefore, confined to the consideration of whether, upon the decision made by the trial court upon the facts, the legal conclusion followed" that the defendant was entitled to a dismissal of the complaint.

As neither branch of the stream was known by any name prior to the conveyance in question, the description of the subject of the grant as "the waters of Kirkland Glen brook which runs over my land" was ambiguous, for that description might include the water of either or both branches, according to the intention of the parties.   Upon proof of the fact that the name "Kirkland Glen brook" had never been used before, a latent ambiguity was presented, which, as defined by Lord Bacon, "is that which seemeth certain and without ambiguity for anything that appeareth upon the deed or instrument, but there is some collateral matter out of the deed that breedeth the ambiguity." (Bacon's Law Tracts, Reg. 23, p. 99.)   As an illustration of his meaning he further said, "If I grant my manor of S. to I. F. and his heirs, here appeareth no ambiguity at all, but if the truth be that I have the manors both of South S. and North S., this ambiguity is matter in fact, and, therefore, it shall be holpen by averment whether of them was that the party intended should pass."   As defined by Baron Alderson in *Smith* v. *Jeffryes* (15 M. & W. 561), "a latent ambiguity is where you show the words

apply equally to two different things, or subject-matters, and then evidence is admissible to show which of them was the thing or subject-matter intended."

A patent ambiguity appears on the face of the instrument while a latent ambiguity is raised by evidence, and to create the latter so as to open the contract to parol explanation it must be established by proof of circumstances known to all the parties. As said in Stephen's Law of Evidence, 231, "If the language of the document, though plain in itself, applies equally well to more objects than one, evidence may be given, both of the circumstances of the case and of statements made by any party to the document as to his intentions in reference to a matter to which the document relates." While the court is to construe the contract, if its construction depends upon the sense in which the words were used in view of the subject to which they relate, it is necessary by proof of collateral facts and surrounding circumstances to place the court in the position of the parties when they made the contract, so as to enable it to understand the meaning of the words used in reducing it to writing. (*Bowman* v. *Agricultural Insurance Company*, 59 N. Y. 521; *Kenyon* v. *Knights Templar, etc., Society*, 122 N. Y. 247; *Thomas* v. *Scutt*, 127 N. Y. 133, 141; *Emmett* v. *Penoyer*, 151 N. Y. 564; 1 Best on Evidence [Wood's edition], 417; 2 Phillips Evidence, 746 [10th edition]; 2 Am. & Eng. Encyc. of Law [2nd ed.], p. 295; *Sargent* v. *Adams*, 3 Gray, 72, 77.) In the case last cited there was an agreement to let the "Adams House," which might include the entire building, including stores on the ground floor, or the part of the building above the stores fitted up for a hotel. It was held a case of latent ambiguity because the general term used in the contract applied with sufficient legal certainty to the entire building including the stores, or to the portion only fitted up for a public house, and consequently it was competent to show by parol in which sense the parties used the term.

Both parties to this action, without objection, aided in solving the ambiguity raised by the evidence, as to the meaning and extent of the grant, by parol testimony. The evidence

given by the plaintiff tended to show that the water of but one branch of the stream was meant, while the evidence in behalf of the defendant tended to show that the water of both branches was meant. As the quantity of water was not defined except by the needs of the college, there was no right of election to take one branch or the other, because the quantity conveyed might require a part of both branches. A question of fact was presented for the referee to pass upon, and the plaintiff supported his .version by his own testimony without corroboration. The defendant's theory was supported by the testimony of two witnesses, one of them apparently disinterested. The referee accepted the latter version, and is .presumed to have found, as a fact, that " the waters of Kirkland Glen Brook," running over the plaintiff's land, under the circumstances and as understood by the parties at the time the conveyance was made, meant the waters of both branches of the general stream. He was warranted in reaching this conclusion of fact, which the learned Appellate Division did not interfere with, the same as he was in reaching the conclusion that no fraud was practiced upon the plaintiff by the college in obtaining the deed, which fact also was left undisturbed. We regard these facts as decisive of the action upon the merits.

The learned Appellate Division, as appears by their opinion, based their reversal upon the ground that the expression " the waters of Kirkland Glen Brook " was descriptive of one brook only, and that the plaintiff was, therefore, entitled to restrain the defendant from using the waters of both brooks. We think this construction was wrong, under the circumstances, because it disregards the facts presumed to have been found by the referee relating to the latent ambiguity, so raised and solved by the parol evidence as to show that the parties intended, by the expression used, to include both branches of the stream. The court below had power to reverse upon the facts, but it did not do so, and, although we have examined all of the exceptions in the record, including those taken to rulings upon evidence, we find no error of law committed by the referee to justify a reversal of his judgment.

59

The judgment of the Appellate Division should, therefore, be reversed and the judgment entered upon the report of the referee affirmed, with costs.

All concur, except BARTLETT, J., not voting.

Judgment accordingly.