**In re GOTHAM SILVER CO., Inc.**

No. 85697.

United States District Court
S. D. New York.

Jan. 12, 1950.

Norbert Rothstein, New York City, for claimant.

Archibald Palmer, and Samuel Masia, New York City, for debtor.

RIFKIND, District Judge.

This is a petition by the debtor for review of an order made by a referee in bankruptcy. The referee, after hearing objections, allowed a general claim of $1200 against the estate of Gotham Silver, Co., Inc., the debtor, in favor of Paul Mayer, a creditor. The referee also granted the creditor's motion for an order authorizing the filing of an amended proof of claim to conform the pleadings to the proof.

On March 17, 1947 the creditor bought from the debtor 480 alarm clocks, to be delivered within thirty days "F.O.B: 32 Bway" (the address, in New York, of the debtor). The price was $2.96 per unit. De-livery of the clocks was made on June 10, 1947 at which time the unpaid balance of the purchase price was paid to the seller by the buyer's shipping agent. The clocks were received in Argentina on September 11, 1947. They were accepted and resold by the buyer. On September 30, 1947 the buyer wrote a letter to the seller in which he expressed dissatisfaction with the seller's performance. On November 9, 1948 the buyer filed a proof of claim against the seller, which had in the meantime sought relief under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., alleging liability by the debtor of $981.20. The proof of claim recited that the basis of the claim was as follows: "$501.20 is demanded as damages (price difference) because the bankrupt delivered, instead of 480 alarm clocks with luminous dials and metal parts, as agreed, 480 alarm clocks with plain dials and plastic parts. The sum of $480.00 is demanded as damages for belated delivery, which compelled sale at $1.00 less per piece than the price would have been if delivery had been timely. Delivery was made in June, 1947 instead of April, 1947."

Objection was made to this claim and a hearing was had before the referee. Both the claimant and his shipping agent testified and at the conclusion of claimant's case the debtor rested without offering any proof. The referee, after the hearing, found the following facts, among others: the buyer is an importer of goods into Argentina; the alarm clocks which were the subject of the sale were luminous dial alarm clocks; a provision on the order form used by the parties as the written memorandum of the sale which read, "All claims must be made within 3 days after receipt of the goods", was not intended to be a term of the sale; under the circumstances of the case, the buyer informed the seller of his complaint within a reasonable time; luminous clocks, if delivered within the time specified in the contract, would have reached Argentina in May and could then have been resold there at $6.00 each, and the non-luminous clocks which were delivered on June 10, 1947 were received on September 11, 1947 and were sold and could be sold there at $3.50 each; as a result of the seller's breach, the buyer

suffered damages of $1200. The referee then made his order allowing a general claim against the estate in the sum of $1200 in favor of Paul Mayer, and granting claimant's motion for an order authorizing the filing of an amended proof of claim to conform to the claim as allowed.

The debtor in its petition for review argues that the order was contrary to law and against the weight of the evidence. Specifically, it asserts that the order was based upon inadmissible hearsay evidence; that no prima facie case was established by the claimant; that the best evidence rule rendered inadmissible evidence received in support of the claim; that the claimant, by accepting the clocks, waived any possible grounds for objecting to the alleged delay in delivery; that the claim was barred because not made within three days, or within a reasonable time after the receipt of the goods, and that the referee erred when he found that the three day provision was not intended to be part of the contract and when he decided that under the circumstances of the case the complaint was made within a reasonable time; that the referee was in error when he found that the contract called for luminous dial alarm clocks; that the referee erred in finding that luminous clocks, delivered on time, could have been resold for $6 each; that the referee erred in finding claimant's damage to be $1200.

■ In effect the debtor was found guilty of two breaches of contract: lateness in delivery and substitution of non-luminous clocks for luminous clocks. We first consider the alleged breach arising from the delay. Since New York is the place where the contract was made, the place of performance, and the place with most contacts with the transaction, New York law governs. Cf. Jones v. Metropolitan Life Insurance Company, 1936, 158 Misc. 466, 286 N.Y.S. 4. See Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Section 130 of the New York Personal Property Law, McK.Consol.Laws, c. 41, is applicable here: "In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

■■ When the seller urges that acceptance of the goods constituted a waiver of the alleged delay, it runs into the teeth of this statute, unless it means to assert that there was an express or implied agreement on the part of the parties waiving the breach. Whether the facts justify finding such an implied agreement, Cf. Atwater & Co. v. Panama R. Co., 1931, 255 N.Y. 496, 175 N.E. 189, we need not decide for, in any event, the buyer's right to sue for damages after acceptance is conditioned upon his giving notice of the breach to the seller within a reasonable time after discovery. This requirement of notice is a condition precedent to the buyer's right, and he must show that the terms of the statute have been complied with. Rothenberg v. Shapiro, Sup. 1913, 140 N.Y.S. 148; 2 Williston on Sales, 2d Ed., 1259 (1924).

■ The purpose of conditioning the right upon notice was to avoid "the hardship on the seller of allowing a buyer at any time within the period of the Statute of Limitations to assert that the goods are or were defective though no objection was made when they were received." 2 Williston on Sales, 2d Ed., 1259 (1924). The argument that a seller who has made a late delivery does not require notice of the breach since, he is, of necessity, aware of it, misses the point of the requirement. The purpose of the statute is not to inform the seller of his own act, but to reveal to him that the buyer chooses to assert the act as a breach and seek a legal remedy therefor. American Mfg. Co. v. United States Shipping Board E. F. Corp., 2 Cir., 1925, 7 F.2d 565, 566.

In the case at bar, the sale which was made on March 17, 1947 called for delivery within thirty days. The buyer's agent testified that delivery was made to him on June

10, 1947. The clocks were received by the buyer in September and, according to his own testimony, were resold that same month. It is therefore clear that acceptance of the clocks occurred, at the latest, in September, 1947.

The record does not indicate that promptly after acceptance the buyer gave notice to the seller of the breach occasioned by the delay. The buyer's letter of September 30, 1947 does not appear in evidence. The seller's reply of October 13, 1947 refers only to a claim of delivery of wrong merchandise and does not manifest any awareness by the seller of a claim of breach for delay. The first time the seller was given notice of the buyer's intention to hold him liable for damages arising out of delay was on the filing of the proof of claim on November 9, 1948. Notice following a lapse of over thirteen months after acceptance, and of over eighteen months from the time buyer ought to have known of the breach is not, in the absence of unusual circumstances, given within a "reasonable time." American Mfg. Co. v. United States Shipping Board E. F. Corp., supra; Brunella v. Bracchi, 1928, 131 Misc. 301, 226 N.Y.S. 738. I therefore hold that the claimant is not entitled to recover damages resulting from the delay.

The second alleged breach was the substitution of plain for luminous dial clocks. The petitioner argues that the sale terms did not require that the clocks be luminous. The referee found as a fact that luminous dial alarm clocks were the subject of the sale on March 17, 1947.

The oral testimony clearly supports this finding and it must stand unless that testimony should have been excluded in obedience to the parol evidence rule. So the seller argues, asserting that the paper executed by the parties is a complete contract which may not be varied by evidence of prior negotiations.

The petitioner's objection is not well taken. I reach this conclusion because the term "Ingersol Alarm", which is the written description of the subject matter of sale, is ambiguous, and may refer either to plain or luminous dial alarm clocks. No evidence was received of custom or usage of the trade which restricts the term "Ingersol Alarm" to plain dial clocks only. Consequently, parol evidence is admissible to explain the ambiguity since it does not vary the terms of the written contract but merely enables the court to understand what the parties wrote as they understood it at the time. See Thomas et al. v. Scutt, 1891, 127 N.Y. 133, 141, 27 N.E. 961; U. S. Printing & Lithograph Co. v. Powers, 1922, 233 N.Y. 143, 159, 135 N.E. 225. Cf. Petrie v. Trustees of Hamilton College, 1899, 158 N.Y. 458, 53 N.E. 216; Bagley & Sewall Co. v. Saranac River Pulp & Paper Co., 1892, 135 N.Y. 626, 32 N.E. 132; Burritt Co. v. Palmer-Marcy Co., Inc., 1923, 236 N.Y. 135, 140 N.E. 221.

It follows that the referee's finding that the contract called for the sale of luminous dial alarm clocks was supported by admissible evidence and is not to be set aside.

The petitioner asserts that the referee erred in finding that the provision on the order form which read, "All claims must be made within 3 days after receipt of goods," was not intended to be a term of the sale. This was presented as a finding of fact, and is to be considered as such. See Poel v. Brunswick-Balke-Collender Co., 1915, 216 N.Y. 310, 322, 110 N.E. 619; Sturtevant Co. v. Fireproof Film Co., 1915, 216 N.Y. 199, 203, 110 N.E. 440, L.R.A.1916D, 1069. I think the referee's conclusion is correct. The contract called for "delivery" within thirty days, meaning of course delivery in New York City. Also, since the contract term was F.O.B. New York, title apparently passed to the claimant on delivery of the clocks to his agent in New York. See Standard Casing Co. v. California Casing Co., 1922, 233 N.Y. 413, 416, 135 N.E. 834. Where delivery occurs and title passes we think it likely that "receipt" occurs. Hence it is reasonable to assume that if the provision had any meaning to the contracting parties it was that claims for defects had to be asserted within three days after receipt of the goods in New York.

But the same order form which contained the printed provision at its foot and

beneath the signatures also contained the following written shipping instructions: "Packed for export, 4 doz to case." As the referee correctly observed, the shipping instructions indicated that there would be no opportunity for inspection until arrival of the goods at their ultimate destination. This, of course, is inconsistent with the requirement of assertion of claims promptly after receipt of the goods in New York. When a contract contains two repugnant provisions, one written and one printed, the written one prevails. Kratzenstein v. Western Assurance Company, 1889, 116 N.Y. 54, 57, 22 N.E. 221, 5 L.R.A. 799. "This rule is applied with greater liberality where it appears that the printed matter is in obscure type or placed where it would not be likely to be seen or where the printed matter was evidently not intended to be incorporated in the contract." Poel v. Brunswick-Balke-Collender Co., 1915, 216 N.Y. 310, 322, 110 N.E. 619, 623. The referee's finding must stand.

Although the three day provision is inapplicable, the claimant, in order to recover damages, must satisfy the provision of the New York Personal Property Law which requires him to give notice to the seller of the breach within a reasonable time. New York Personal Property Law, § 130. The seller's letter of October 13, 1947 indicates that the claimant, in a letter dated September 30, 1947, apprised the seller of the breach arising out of the delivery of plain dial clocks. The referee, relying chiefly on the claimant's testimony, found the facts substantially as follows. The clocks arrived in Argentina on September 11, 1947. The claimant thereupon examined the clocks and, discovering the discrepancy, invited inspection by the Sociedad General de Control, a firm customarily used in Argentina for examination and report on the quality of imported goods. A report from the Sociedad was received by the claimant on September 27, 1947, and the letter of complaint was written to the seller on September 30, 1947.

■ The referee decided that, under the circumstances of the case, notice was given in a reasonable time. Since the goods were packed for export it is apparent that the defects could not be ascertained until arrival of the goods in Argentina. Certainly a period extending from September 11, 1947 until September 30, 1947 could not be considered unreasonably long as a matter of law. Nothing has been brought to my attention which impels me to characterize the referee's finding of fact as to the reasonableness of the period as clearly erroneous.

■ I now come to a consideration of the damages to which the buyer is entitled. The normal measure of damages for breach of warranty is the difference between the value of the goods if they had been as they were warranted and the value of the goods as they actually were. Bond Electric Corp. v. Gold Seal Electrical Co., Inc., 1936, 271 N.Y. 461, 3 N.E.2d 594. N. Y. Personal Property Law, § 150, subd. 7. If this be the measure of damages applicable to this case we would look to the market in New York on or about June 10, 1947 to ascertain the difference in value between luminous and plain face alarm clocks. See Standard Casing Co. v. California Casing Co., 1922, 233 N.Y. 413, 419, 135 N.E. 834. This measure is proper unless there are "special circumstances showing proximate damage of a greater amount." N. Y. Personal Property Law, § 150, subd. 7. Since the referee allowed the buyer the profits lost in the resale he must have applied the exception rather than the rule.

Whether or not the exception is applicable calls for evaluation of what the parties contemplated when contracting. The evidence does not disclose that the claimant imparted to the seller any specific information on actual or proposed contracts of resale. On the other hand, it is clear that the seller must have known that the claimant was not purchasing 480 alarm clocks for his own use. It is not unreasonable to assume that the seller at the time of contracting was aware of the fact that the claimant was purchasing the clocks with the intention of importing them into Argentina and there reselling them. The question arises whether this general knowledge suffices to make the seller liable to the claimant for the diminished resale profits.

In Czarnikow-Rionda Co. v. Federal Sugar Refining Co., 1930, 255 N.Y. 33, 173 N.E. 913, 88 A.L.R. 1426, the leading New York case, it is said, " 'Mere knowledge that goods are purchased for resale in the ordinary course of business will not take the transaction out of the general rule and place it under the exception.' If this were not so, the exception would swallow up the general rule completely, for a manufacturer or jobber must always know that a wholesaler or retailer, who buys from him, purchases for the purposes of reselling the articles bought." Ibid. 255 N.Y. at page 43, 173 N.E. at page 916. "It is the general rule that a purchaser of goods on contract, who has contracted to resell them to his own customer, for a non-delivery by the original seller, is entitled only to general damages, for the reason that, by a resort to the general market, he might have replaced the undelivered goods and thereby have satisfied his customer." Ibid. 255 N.Y. at page 41, 173 N.E. at page 915.

In the Czarnikow case the court discussed in considerable detail the question of whether the seller at the time of contracting had reason to know that the buyer would be unable to obtain other goods to supply the place of those not delivered or delivered in defective condition. The court decided that the seller did not have reason to know of such impossibility, if indeed such impossibility existed.

In the case at bar, the seller contracted to pack for export. He therefore knew that the goods would not be examined until they arrived in Argentina. He should have realized that if the goods proved to be defective on arrival in Argentina, the buyer would have to undergo some delay in procuring a replacement for them. But the question then arises whether this is equivalent to knowledge that there would be inability to replace.

I think not. We are here dealing with Ingersoll alarm clocks, clearly not a unique item manufactured exclusively by the seller. Cf. Carleton v. Lombard, Ayres & Co., 1896, 149 N.Y. 137, 43 N.E. 422. The seller may have supposed that there was a market to

which the buyer could go for replacement. At the worst, the buyer would have to order the clocks from another jobber in the United States and would suffer some delay in getting the clocks to his customers. But a similar circumstance in the Czarnikow case was not considered vital: " * * * Federal, in contracting with Czarnikow, might reasonably have supposed that Czarnikow would so phrase its subcontracts, in respect to terms of delivery, that, if Federal failed of performance, Czarnikow, through resort to the general market, might nevertheless perform." Czarnikow-Rionda Co. v. Federal Sugar Refining Co., 1930, 255 N.Y. 33, 48, 173 N.E. 913, 918, 88 A.L.R. 1426. The very least that can be said is that no proof was here presented that the seller knew or should have known of such impossibility of replacement.

I therefore conclude that this case is well within the area limned by the Czarnikow case. Hence on the facts disclosed by this record I cannot agree that the measure of damages should be the profits lost by the inability to resell the luminous clocks in Argentina. Also see Andersen Trading Co. v. Brody, 1923, 205 App.Div. 47, 199 N.Y.S. 128.

However, another "special circumstance" which may warrant a departure from the normal measure of damages must be considered. In the case at bar, the goods were packed for export and the delivery was made at a distance. Consequently, the buyer neither knew nor had reason to know of the breach until he received the goods in Argentina. To measure the damages by the difference between the value of luminous clocks and plain dial clocks in New York on June 10, 1947 may not fairly compensate the buyer for the loss which he suffered on discovering the discrepancy in September. I therefore think that the time for measurement of damages may be shifted to the date when the buyer should have known of the default. Cf. Perkins v. Minford, 1923, 235 N.Y. 301, 305, 139 N.E. 276.

Consequently, in this case the damages may be measured in New York on September 11, 1947. The record discloses no evi-

dence of the market price in New York on either of the relevant dates of either plain or luminous dial Ingersoll alarm clocks.

 Nor can we resort to the verified proof of claim to provide the necessary information. It is not clear precisely what the figure $501.20 in the proof of claim represents. Furthermore, although a verified proof of claim has some evidential value in and of itself, Whitney v. Dresser, 1906, 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584, if the claimant affirmatively attempts to establish the allegations in his claim, he can not rely on the proof of claim to supply the deficiencies in his testimony. In re T. A. McIntyre & Co., 2 Cir., 1909, 174 F. 627; In re Annin & Co., 2 Cir., 1938, 95 F.2d 381, 383.

The order is reversed and the claim remanded to the referee for further proceedings not inconsistent with this opinion.