**WALTER E. HELLER & CO., Inc. v.
SUFRIN et al.
Civ. No. 7637.**

United States District Court
W. D. Pennsylvania.
April 6, 1953.

Isidor M. Goldsmith, Pittsburgh, Pa., for plaintiff.

A. S. Hollinger and Reed Smith, Shaw & McClay, Pittsburgh, Pa., for defendants.

STEWART, District Judge.

This is a suit to recover a sum allegedly due and owing on a sales contract entered into between the plaintiff's assignor and the defendants. This case was tried on April 4, 1952 by the Court sitting without a jury, and on all the evidence we make the following findings of fact:

### Findings of Fact

1. In the early part of 1948, Leslie Electric Company, Inc., (hereinafter referred to as Leslie), a corporation organized under the laws of New York State and having its principal place of business in Brooklyn, was engaged in the manufacture and sale of electric toasters and other electrical products.

2. In the early part of 1948, Leslie was marketing an electric toaster known as "Press-To-Magic" Pop-Up Toaster and had advertised this merchandise in trade magazines, in circulars transmitted to the electric appliance dealers and at the Chicago Housewares Convention in January, 1948.

3. This advertising matter, used and circulated by Leslie, stressed as one of the advantages of this brand a "new, cleverly designed timing device with a positive action adjusting lever to give perfect toast every time".

4. In the early part of 1948, the defendants, Isadore and Martin Sufrin, were engaged, as co-partners, in the sale at wholesale of radios and electrical appliances, and had their principal place of business at 1207 Muriel Street, Pittsburgh, Pennsylvania.

5. The defendant, Martin Sufrin, attended a housewares convention in Chicago in January, 1948, and the "Press-To-Magic" toaster was on display there. He read about the toaster in various advertisements, including the advertisement published in the January issue of the trade magazine "Retailing Home Furnishing". In addition, he received a circular from Leslie describing in detail the features and sales advantages of the toaster.

6. In February, 1948, pursuant to an inquiry by Isadore and Martin Sufrin, Leslie further advised them of the merits of this toaster and in a letter to them stated that "this toaster features a perfectly balanced timing device operated by a positive action lever".

7. Relying upon the aforesaid representations and warranties of Leslie with respect to the timing features of this toaster, the defendants, beginning in February, 1948, placed orders for a total number of 1,453 toasters as follows:

| Date | Number of Toasters | Amount | Unit Cost |
|------|------|------|------|
| Feb. 19, 1948 | 150 | $1651.50 | $11.01 |
| Feb. 20, 1948 | 1 | 11.01 | 11.01 |
| Feb. 27, 1948 | 504 | 5549.04 | 11.01 |
| Feb. 27, 1948 | 498 | 5482.98 | 11.01 |
| Mar. 22, 1948 | 300 | 3303.00 | 11.01 |

8. All orders for said toasters were accepted by Leslie and shipped to defendants f.o.b. Brooklyn, New York.

9. Upon receipt of the toasters, the defendants resold them in the same sealed cartons as received to numerous retailers who were their regular customers for radios, television sets and various other electrical appliances.

10. During this early period of 1948, the conditions of the market for toasters was such that the demand for toasters greatly exceeded the supply thereof. Consequently, the defendants restricted the number of their sales to individual customers so that all their customers would receive some toasters.

11. These toasters were purchased by the defendants at a unit cost of $11.01 and were resold by them for $13.30 each.

12. Defendants paid to Leslie the purchase price of all toasters except the 498 purchased on February 27, 1948 and the 300 purchased on March 22, 1948.

13. The account receivable arising by reason of the sale of toasters by Leslie on February 27, 1948 and March 22, 1948, to the defendants, in the total amount of $8,785.98, was assigned by Leslie to Walter E. Heller and Company, Inc., plaintiff herein, a corporation which is engaged in factoring accounts.

14. Plaintiff is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in Chicago, Illinois, and having a place of business in New York City.

15. Shortly after defendants had received and resold the toasters to their customers, they received numerous complaints concerning the defective operation of the timing device in these toasters. These complaints were received by Martin Sufrin through letters, telephone calls and personal interviews with his dealer customers.

16. Upon receiving these complaints, defendants conducted tests on some of these toasters in their own shop and these tests disclosed that the timing device was defective in many of the toasters in that it did not operate the pop-up mechanism, thereby causing the toast to burn unless the plug was disconnected from the socket.

17. Each toaster package sold to Isadore and Martin Sufrin and resold by them contained a card on which was printed the guarantee of Leslie against defective materials and workmanship.

18. Three hundred and thirty-six defective toasters were returned to defendants by dealers and either credited to the dealer's account or refunded in cash.

19. Two hundred and seventy-two of these defective toasters were returned to Leslie between March 22, 1948 and August 27, 1948 and defendants' account was credited therefor by Leslie. Subsequent to August 27, 1948 and through March 2, 1949, defendants returned 64 additional defective toasters to Leslie but received no credit therefor, nor were these toasters ever replaced or returned to defendants.

20. The total cost to the defendants of these 64 toasters was $704.64.

21. Defendants sustained a loss of profits of $769.44 on the 336 defective toasters returned to Leslie for the reason that the toasters were not as warranted.

22. During the period from March 19, 1948 to August 27, 1948, defendants made payments to plaintiff totaling $2,487.72. This amount plus the credit of $2,994.72 for the 272 defective toasters returned by defendants totals $5,482.44, and is $3,303.54 less than the purchase price of 798 toasters.

23. Defendants have not presented evidence sufficient to show any damage in the nature of a loss of good will resulting to them from the breach of warranty by Leslie.

24. Defendants notified Leslie of the complaints received by them and of the defective nature of the toasters as soon as these facts were known to them.

## Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter of this action by virtue of § 1332 of Title 28 of the United States Code. See discussion in Norwood Lumber Corp. v. McKean, 3 Cir., 1946, 153 F.2d 753 at page 754, relating to the jurisdiction question presented where a plaintiff alleges damages in excess of $3,000 but fails to prove them to this extent.

2. Both the assignment of the accounts receivable from Leslie to the plaintiff and the sales of the "Press-To-Magic" pop-up toasters from Leslie to the defendants are covered by the laws of New York since both contracts were entered into in New York State.

3. Plaintiff, as assignee of defendants' accounts receivable, is subject to all defenses, set-offs and counterclaims which the defendants had against Leslie arising out of the transaction which is the foundation of the defendants' claim, regardless of whether such defenses etc. existed before or came into existence after the assignment or after the commencement of this action. Blog v. Burden & Co., 1933, 238 App.Div. 634, 265 N.Y.S. 81.

4. The representations made by Leslie to defendants constituted an express warranty that the "Press-To-Magic" pop-up toaster manufactured by it had a positive action timing device.

5. The fact that the "Press-To-Magic" toaster did not embody a positive action timing device constituted a breach of that express warranty.

6. The card enclosed in each toaster package constituted a guaranty by Leslie to repair or replace any toaster which was defective in workmanship or materials.

7. The fact that Leslie failed to replace or return in a repaired condition the defective toasters which were returned to it constituted a breach of this guaranty.

8. Defendants are entitled to a credit for the 64 toasters returned by them to Leslie in an amount of $704.64.

9. Defendants are entitled to a diminution in the purchase price by virtue of the loss of profits in an amount of $769.44 sustained by them on the 336 toasters returned to Leslie for the reason that special conditions existing in the market at that time prevented the defendants from replacing these toasters on the open market. See New York Personal Property Law, McK.Consol.Laws, c. 41, § 150; cf. In re Gotham Silver Co., Inc., D.C.S.D. N.Y.1950, 91 F.Supp. 520; Andersen Trad-

ing Co. Ltd. v. Brody, 1923, 205 App.Div. 47, 199 N.Y.S. 128.

 10. Defendants sustained no damages in the nature of a loss of good will resulting from this breach of warranty by Leslie.

11. The amount of $1,829.46 remains due and owing by the defendants on the purchase price of the toasters. This amount represents the difference between $3,303.54 and the total of the credit for the 64 toasters combined with the damages sustained from loss of profits on 336 toasters in an amount of $1,474.08.

 12. No interest will be allowed since defendants had a legitimate defense to a portion of plaintiff's claim and since by virtue of the breach of warranty and guaranty by Leslie, the sum that was due was not definite or capable of determination by process of mathematical calculation from a standard fixed in the contract or from market prices. See Restatement of Contracts, § 337. However, costs will be assessed against the defendants.

13. Accordingly, judgment will be entered in favor of the plaintiff and against the defendants in an amount of $1,829.46, together with costs.