Thomas G. Chimera, J.
Plaintiff moves for judgment on the pleadings. The action is brought for a declaratory judgment. Plaintiff alleges he is the owner of certain property subject to a first and to a second mortgage. The denial of knowledge or information sufficient to form a belief with respect to the complaint allegation of ownership is ineffective to raise a triable issue with respect to such record fact. It is contended by the defendant, as appears in its answer, that its discussions in relation to the matter in issue were with plaintiff’s predecessor. Nevertheless, it cannot be said, as defendant asserts, that upon the basis of these pleadings a dispute is not tendered. Nor may it be reasonably contended that there is no need at this time for adjudication upon the ground that the plaintiff has failed to *706 allege that he has obtained a commitment for a first mortgage to replace the existing first mortgage which will conform to the provisions of article 20 of the existing second mortgage. The resolution of the dispute will be helpful, if not essential, to the securing of a new first mortgage.
Involved in this dispute, as stated, is article 20 of the existing second mortgage, which also constitutes the allegations of paragraph “ Seventh ” of the complaint, and is as follows: “ This mortgage shall be subject and subordinate to any new first mortgage given in substitution of the existing first mortgage, provided the terms of said new mortgage shall not be more onerous than the terms of .said existing first mortgage, that the interest rate shall not exceed the interest rate provided for in said existing first mortgage, that all taxes, assessments and past due interest be paid at the time of said substitution, that any excess in the principal of said new first mortgage above the principal then unpaid on the then existing first mortgage shall be paid to the holders of this mortgage in reduction of the principal thereof and in the event that the percentage of interest and amortization, as provided for in the existing first mortgage is reduced or in the event that a new first mortgage is placed on the premises wherein the percentage of interest and amortisation is below that now called for by the existing first mortgage, then and in either of such events the difference between such reduced percentages and the existing percentages shall be added to the amortization of this second mortgage. Except as additional amortization is herein provided for, any payments made under this paragraph shall not be deemed a payment on account of any installment or installments due hereunder or to relieve the owner of the premises herein described from the obligation to continue to pay the installments as herein provided. In the event of such substitution the holder of this mortgage shall, at the owner’s expense, execute and deliver a proper agreement subordinating this mortgage to such new mortgage. ’ ’ (Emphasis supplied.)
In answer to the allegations of paragraph ‘ ‘ Seventh ’ ’, the defendant admits that article 20 of the second mortgage reads as it is set out in paragraph ‘1 Seventh ” and otherwise defendant denies the allegations of paragraph “Seventh”. Since there are no other allegations therein, the terms and conditions set forth in article 20 of the second mortgage are admitted and for the purpose of this controversy it is not required that the second mortgage be submitted in full.
It is further alleged in the complaint that plaintiff advised the defendant that the new first mortgage would provide for *707 interest to be paid at 4% per annum and would otherwise comply fully with the provisions of article 20 of the second mortgage, including payment of interest and amortization based upon the principal balance due on June 1,1963, the date of the expiration of the existing first mortgage, in the same percentage as provided for in the existing first mortgage and defendant would be required to execute an agreement subordinating the second mortgage to the new or substituted first mortgage in accordance with article 20. In answer to those allegations, the defendant has alleged that it was not advised at any time that a prospective first mortgagee was obtained, ready, willing and able to deliver a new first mortgage, in conformity with article 20. It is further alleged in the complaint that defendant advised the plaintiff that it would refuse to execute any subordination unless plaintiff would agree to pay to the defendant the difference between the dollar amounts of the monthly payments of interest and amortization being made on the present first mortgage and such payments as they may be provided in the new or substituted first mortgage. In answer thereto, defendant has alleged that there must be compliance with the provisions of article 20 in that the terms of the new first mortgage must not be more onerous than those of the existing first mortgage, that the interest rate must not be more than 4% per annum, and ‘‘ that if the provision for payment of interest and amortization on the new first mortgage were to call for the payment of a lesser fixed sum than the monthly fixed sums provided to be paid for interest and amortization on the existing first mortgage, the difference would be payable as additional amortization on the second mortgage” and» in such event a subordination agreement would be executed.
In its separate defense, defendant alleges that the second mortgage in suit is a purchase-money mortgage. At the time it was executed the first mortgage in the sum of $1,250,000 provided for the payment to the first mortgagee on the first day of each month from July 1, 1948 to and including June 1, 1953 of “ the fixed sum of $8,333.33 ” and on the first day of each month from July 1, 1953 to and including May 1, 1963 of “ the fixed sum of $7,291.67 ”, to be applied first to the payment of interest on unpaid balances of principal at the rate of 4% and second to the reduction of the principal amount remaining unpaid, the entire balance of principal amount with interest thereon to be paid on June 1, 1963, when the unpaid principal will be in the sum of $378,007.58. It is then alleged that in the course of negotiations which led to the making of the second mortgage, it was agreed that the terms of any new first mortgage would not be *708 more onerous than the terms of the existing first mortgage, interest would not exceed 4% per annum, and that “if the provision for payment of interest and amortization on the new first mortgage were to call for the payment of a lesser fixed sum than the monthly fixed sums provided to be paid for interest and amortization on the existing first mortgage, the difference would be paid as additional amortization' on the second mortgage It is then alleged that such agreement was incorporated-into article 20 of the second mortgage. The defendant insists that it is not thereby seeking to change the terms of the second mortgage but rather is explaining the intent of the parties in the light of the agreement reached by negotiation.
The mortgage, however, is accepted as it is written and there is no request for reformation and since it is alleged that the agreement reached was incorporated in article 20, it must be construed upon the basis thereof. There is no ambiguity therein. It would have been a simple matter to provide in the second mortgage that any new mortgage must provide that there be paid monthly as interest and amortization that sum which was fixed in the existing first mortgage. However, this was not done and the percentages used in article 20 happen to represent the ratio of the monthly payments provided in the existing first mortgage to the principal amount thereof, to wit, 8% for the first period and 7 Jo for the succeeding period.
Both parties rely on Hutchison v. Ross (262 N. Y. 381, 398). The particular portions of the opinion relied on by the parties are culled from the following: ‘ ‘ Deeply imbedded in the judicial decisions of every common-law jurisdiction is the rule that the terms of a written agreement cannot be varied by parol and that in construing the agreement ‘ it is not the real intent but the intent expressed or apparent in the writing which is sought.’ (2 Williston on Contracts, § 610.) Thus, except for the purpose of having a contract reformed, a party to a written agreement may not assert its validity and at the same time deny that the writing embodies the actual contractual rights and obligations which the parties intended to make. The written agreement defines conclusively the contractual rights and -obligations of the parties. It does nothing more. Recitals, even recitals of consideration, unless intended -themselves to embody a contractual right or obligation, may be contradicted. ‘ The consideration of a written instrument is always open to inquiry, and a party may show that the design and object of the agreement was different from what the language, if alone considered, would indicate.’ (Baird v. Baird, 145 N. Y. 659, 664; Cf. Juilliard v. Chaffee, 92 N. Y. 529.) The principle precludes denial, limitation or *709 extension of a contractual right embodied in a. writing. It extends no further.” There is no lawful basis in the circumstances here for inquiry as to the real intent, if perchance there had been any intent expressed other than that to be found within the four corners of the subject document, which is in all respects unambiguous. The contractual right must be construed as it has been written.
Defendant further relies on Petrie v. Trustees of Hamilton Coll. (158 N. Y. 458, 464) and more particularly upon the following portion of the opinion: 1 ‘ While the court is to construe the contract, if its construction depends upon the sense in which words were used * * * it is necessary by proof of collateral facts and surrounding circumstances to place the court in the position of the parties when they made the contract, so as to enable it to understand the meaning of the words used in reducing it to writing.” However, that was taken out of the following context: “ A patent ambiguity appears on the face of .the instrument while a latent ambiguity is raised by evidence, and to create the latter so as to open the contract to parol explanation it must be established by proof of circumstances Imown to all the parties. As said in Stephen’s Law of Evidence, 231, ‘ If the language of the document, though plain in itself, applies equally well to more objects than one, evidence may be given, both of the circumstances of the case and of statements made by any party to the document as to his intentions in reference to a matter to which the document relates.’ While the court is to construe the contract, if its construction depends upon the sense in which the words were used in view of the subject to which they relate, it is necessary by proof of collateral facts and surrounding circumstances to place the court in the position of the parties when they made the contract, so as to enable it to understand the meaning of the words used in reducing it to writing. (Bowman v. Agricultural Insurance Company, 59
N. Y. 521; Kenyon v. Knights Templar, etc., Society, 122 N. Y. 247; Thomas v. Scutt, 127 N. Y. 133, 141; Emmett v. Penoyer, 151 N. Y. 564; 1 Best on Evidence [Wood’s edition], 417; 2 Phillips Evidence, 746 [10th edition]; 2 Am. & Eng. Encyc. of Law [2nd ed.], p. 295; Sargent v. Adams, 3 Gray, 72, 77.) In the case last cited there was an agreement to let the ‘ Adams House, ’ which might include the entire building, including stores on the ground floor, or the part of the building above the stores fitted up for a hotel. It was held a case of latent ambiguity because the general term used in the contract applied with sufficient legal certainty to the entire building including the stores, or to the portion only fitted up for a public house, and conse *710 quently it was competent to show by parol in which sense the parties used the term.”
There is neither patent nor latent ambiguity here.
Plaintiff is entitled to prevail and to obtain the declaration he seeks.
The motion is granted accordingly.